## 34854. HALL v. THE STATE.

HILL, Justice.

Rosa Hall was indicted and convicted on eight counts of the offense of bad check. She was sentenced to 12 months on each count, the sentences to run consecutively. In this appeal, she raises 12 enumerations of error.

Code Ann. § 26-1704 (Ga. L. 1975, pp. 482, 483, as

---

amended by Ga. L. 1977, pp. 1266, 1267—1268) makes criminal the issuance of a bad check in exchange for present consideration by a person who knows the check will not be honored by the drawee. The statute then goes on to create 2 presumptions of knowledge that the check would not be honored.[1] The first is that where the accused had no account with the drawee at the time of making the check, this fact is prima facie evidence of knowledge that the check would not be honored. Code Ann. § 26-1704 (a) (1). The second provides for a presumption of such knowledge where the check was presented to the drawee within 30 days of delivery and payment was refused, and the accused has not paid the amount due on the check plus a specified service charge within 10 days after the accused received written notice that payment was refused by the drawee. Code Ann. § 26-1704 (a) (2). The statute then provides that: "Notice mailed by certified or registered mail, evidenced by return receipt, to the address printed on the instrument or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received by the person making, drawing, uttering or delivering said instrument whether such notice shall be returned undelivered or not." Code Ann. § 26-1704 (a) (2) (A). The quoted provision was added by the 1977 amendment to the statute (Ga. L. 1977, pp. 1266, 1267—1268).

1. Under the second part of this Code section, a person can be found guilty of issuing a bad check knowing it will not be honored if payment on the check is refused by the drawee upon presentation within 30 days and the maker fails to make the check good (plus service charge) within 10 days after notice of the drawee's dishonor. Further, the notice to the maker which triggers the requirement of payment can be proved by return receipt on a notice sent by certified or registered mail to the

---

[1]The statute does not use the term presumption; rather it refers to prima facie evidence. In this connection, see County Court of Ulster County, New York v. Allen, 47 USLW 4618 at 4622 (June 4, 1979); Turner v. United States, 396 U. S. 398, 423 (90 SC 642, 24 LE2d 610) (1970); IX Wigmore on Evidence 293, § 2494 (1940).

address on the check given by the maker. Moreover, even if the notice is returned undelivered, the accused's failure to make payment within 10 days of such notice is prima facie evidence that the accused knew the instrument would not be honored.

The defendant attacks Code Ann. § 26-1704(a) (2) on two grounds. First, she argues that the failure to pay the amount due on the check, plus a specified service charge, after notice that it was dishonored by the drawee cannot be used as prima facie evidence of knowledge that the check would not be honored. We disagree. In our view this is what the United States Supreme Court has recently described as the "most common evidentiary device . . . the entirely permissive inference or presumption which allows — but does not require — the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant. . . In that situation the basic fact may constitute prima facie evidence of the elemental fact." County Court of Ulster County, New York v. Allen, supra. Such a permissive presumption survives scrutiny if there is "a 'rational connection' between the basic facts that the prosecution proved and the ultimate facts presumed, and the latter is 'more likely than not to flow from' the former." Id. at 4624.

This presumption satisfies that test. There is a "rational connection" between the basic fact — failure to pay a dishonored check after notice — and the presumed fact — knowledge that the check would be dishonored — because more often than not checks are honored and more often than not a person who writes a check that for some reason is dishonored is able to and does make it good. Thus, when a person fails, after notice, to see to it that the payee of a check receives payment, it is more likely than not that the maker knew that payment would not be made. Of course, there may be instances where this is not so, but in those cases the defendant would be allowed to rebut the presumption. We find the first presumption valid, when given correctly in charge to the jury (see Division 3).

As for defendant's second challenge to Code Ann. § 26-1704 (a) (2), we agree that the presumption that notice

has been received when the notice was in fact returned undelivered is an irrational presumption arising from facts to the contrary. Thus, the phrase "whether such notice shall be returned undelivered or not" in Code Ann. § 26-1704 (a) (2) (A), is so arbitrary as to violate due process. Leary v. United States, 395 U. S. 6, 36 (89 SC 1532, 23 LE2d 57) (1969); County Court of Ulster County, New York v. Allen, supra.[2]

In the case before us defendant was convicted on eight counts and each count involved one check. Two of the checks were cashed at a store which did attempt to give notice by certified mail; the envelope used was returned undelivered and was introduced into evidence. The trial court read the relevant portions of the statute to the jury in its charge. Thus, because the jury could have relied on this presumption in finding knowledge by the defendant that the check would be dishonored which is an element of the crime, the convictions on those two counts must be reversed. Leary v. United States, supra, 395 U. S. at 31-32. The other six counts are not, however, affected by this ruling, because in proving them the state did not rely on the presumption of notice.[3] Because, in these six counts, no certified or registered notice reached the defendant and thus no requirement of payment of any service charge arose, the defendant lacks standing to challenge the service charge provision of the statute.

---

[2]We note that the fact that the notice was returned undelivered could be prima facie evidence of knowledge that the check would not be honored given a provision that the notice be mailed within a reasonable time, because it could tend to show the accused gave a false address or intended to leave with no forwarding address. But the fact that the notice was not delivered cannot be evidence that the notice was received. Additionally, if an undelivered letter is used to show the accused gave a false address, the same address cannot be used as prima facie evidence of identity under Code Ann. § 26-1704 (e) (1).

[3]Three of the other checks were cashed at a store which sent "letters" as to each check. There was no evidence, however, that the letters were registered or certified with return receipt. Therefore, because it is not

2. Defendant also attacks the presumption in Code Ann. § 26-1704 (e), which provides that:

"(e) In any prosecution or action under the provisions of this section, a check, draft, or order for which the information required in subparagraphs (1) and (2) of this subsection (e) is available at the time of issuance shall constitute prima facie evidence of the identity of the party issuing the check, draft, or order and that such person was a party authorized to draw upon the named account.

"(1) To establish this prima facie evidence, the following information regarding the identity of the party presenting the check, draft or order shall be obtained by the party receiving such instrument: The full name, residence address, and home phone number.

"Such information may be provided by either of two methods:

"(A) Such information may be recorded upon the check or instrument itself; or

"(B) The number of a check-cashing identification card issued by the receiving party may be recorded on the check. Such check-cashing identification card shall be issued only after the information required in subparagraph (1) has been placed on file by the receiving party.

"(2) In addition to the information required in subparagraph (1), the party receiving a check shall witness the signature or endorsement of the party presenting such check, and, as evidence of such, the

---

involved in this case, we do not analyze the statutory presumption that where the notice is delivered to the address given, as evidenced by a return receipt, this "shall be deemed sufficient and equivalent to notice having been received by the person." We note, however, that the language "shall be deemed sufficient and equivalent to notice", when given in charge to the jury without further explanation, could be construed to establish a mandatory presumption. See Sandstrom v. Montana, 47 USLW 4719, 4722—4723 (June 18, 1979); County Court of Ulster County, New York v. Allen, supra, 47 USLW 4618, 4623 n. 16.

receiving party shall initial the check."

Defendant argues that this presumption of identity is irrational and that the evidence is insufficient to show that defendant was the person who wrote the checks at issue. We find it unnecessary to discuss defendant's argument regarding the sufficiency of the evidence absent the presumption, because the presumption is valid. Put in its simplest terms, this is merely a presumption that a person is who he says he is. This is certainly "more likely than not." Since this is a permissive presumption which the defendant may rebut, see Division 1, supra, it satisfies the strictures of due process. County Court of Ulster County, New York v. Allen, supra.[4]

3. Defendant also argues that the presumptions of knowledge, identity and authority in Code Ann. § 26-1704 are unconstitutional in that they allow a finding of guilt without proof beyond a reasonable doubt. We cannot agree. As we have set forth in Divisions 1 and 2, supra, these are permissive presumptions. They do not allow a finding of guilt without proof beyond a reasonable doubt. County Court of Ulster County, New York v. Allen, supra.

However, in view of Sandstrom v. Montana, supra, 47 USLW at 4722-4723, when charging Code Ann. § 26-1704 to the jury, the trial judge should make clear to them that (1) the presumptions are not conclusive on the jury and may be disregarded, or may be rebutted by any evidence, (2) they do not shift any burden of proof to the defendant and the burden of proof remains on the state to prove each element of the crime beyond a reasonable doubt. See Sandstrom v. Montana, supra; County Court of Ulster County, New York v. Allen, supra, 47 USLW 4618, 4623 ns. 16, 19.

4. Defendant also argues that the testimony of the manager of the drawee bank's bookkeeping department was hearsay and was improperly admitted over objection. Testifying from records made in the regular course of

---

[4]In this case, defendant put on no evidence whatsoever but rested her case at the close of the prosecution's evidence.

business the bank officer stated, over defendant's continuing hearsay objection, that the account was opened in the name of Rosa Hall with a $25 deposit on July 17, 1978, that no other deposits were made, that three checks were paid from the account, that other checks were drawn on the account but were not paid due to insufficient funds, that statements sent to the address given by the defendant were returned, and that the bank closed the account on August 28, at which time it was overdrawn in the amount of $298.92. On cross examination, the officer testified that he did not prepare the records, that they were prepared by a "sorter computer."

The state argues that the bank officer's testimony was admissible pursuant to Code Ann. § 38-711, the business records exception to the hearsay rule. In this case, however, at the conclusion of the state's case the trial court excluded the bank's business records from evidence, sustaining the defendant's objection on the ground that they were not properly authenticated. The lack of authentication resulted from the state's failure to have the bank officer identify the records he used in testifying (he never referred to them by exhibit number). See *Martin v. Baldwin,* 215 Ga. 293 (4) (110 SE2d 344) (1959). The bank officer's testimony was initially admitted, over objection, as explication of the records.[5] After the bank's records were excluded from evidence, the defendant renewed her objection to and moved to strike the bank officer's testimony. In the absence of any authentication of the records which his testimony purported to track, his testimony was inadmissible. *Sabo v. Futch,* 226 Ga. 352 (1, 3) (175 SE2d 16) (1970). Since the testimony clearly was prejudicial, the convictions must be reversed. *Sabo v. Futch,* supra (2).

---

[5]Technically speaking, Code Ann. § 38-711 permits introduction of the business records; testimony as to the contents of those records is hearsay. *Sabo v. Futch,* 226 Ga. 352 (1) (175 SE2d 16) (1970) and cits. However, in some of our courts the witness who testifies as to the making of the records in the regular course of business is also allowed to testify as to the contents of those records.

5. Defendant argues that once the bank officer's testimony is excluded, the remaining evidence is insufficient to support the conviction. She moved for a directed verdict on this ground at the close of the evidence.

In Burks v. United States, 437 U. S. 1 (98 SC 2141, 57 LE2d 1) (1978), the Supreme Court held that once a reviewing court reverses a conviction solely for insufficiency of the evidence to sustain the jury's verdict of guilty, double jeopardy bars retrial. There, however, no evidence admitted at trial was excluded by the appellate court. In Burks, the Supreme Court reaffirmed the proposition that where a defendant obtains a reversal based upon "trial error," double jeopardy does not bar retrial.

In the case before us, we have the question of whether we should consider the sufficiency of the admissible evidence to sustain the jury's verdict, excluding from such consideration the evidence admitted at trial but found inadmissible on appeal (the testimony of the bank officer). This precise question was left unresolved by the Supreme Court in Greene v. Massey, 437 U. S. 19, 26 n. 9 (98 SC 2151, 57 LE2d 15) (1978), decided with Burks v. United States, supra.

At the outset, we note that the evidence found inadmissible on appeal was not found to be incompetent. Thus, such evidence would not be automatically excluded at a retrial but could be made admissible by laying the proper foundation.

Our study of Burks v. United States and Greene v. Massey, supra, leads us to conclude that the case before us properly belongs in the trial error category rather than the insufficiency of the evidence category. In Burks the Supreme Court said, quoting in part from an earlier decision (437 U. S. at 15): " 'It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to

---

This practice may be of assistance to the trier of fact and harmless error in that the inadmissible testimony duplicates the admissible business record.

conviction.' . . . In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished."

In the case before us, we find that society's interest dictates that this case be placed in the trial error category. We find that where an appellate court reverses a conviction on the basis that competent evidence was erroneously admitted, the appellate courts in Georgia will not and need not then review the remaining evidence on sufficiency grounds.[6]

6. In view of our disposition of these issues, it is unnecessary to discuss the remaining enumerations of error.

*Judgment reversed. All the Justices concur, except Jordan, J., who dissents to Division 4.*

ARGUED MAY 15, 1979 — DECIDED SEPTEMBER 5, 1979.

*Hodges & Erwin, William A. Erwin,* for appellant. *William S. Lee, District Attorney,* for appellee.

---

[6]Of course an enumeration that the evidence is insufficient even prior to the exclusion of improperly admitted evidence must be considered. An appeal in that posture would be controlled by Burks. The evidence in this case clearly was sufficient when the bank officer's testimony is considered.