# LOCKHART, DIRECTOR, ARKANSAS DEPARTMENT OF CORRECTION *v.* NELSON

No. 87–1277.   Argued October 3, 1988—Decided November 14, 1988

*J. Steven Clark*, Attorney General of Arkansas, argued the cause for petitioner.   With him on the briefs was *Clint Miller*, Assistant Attorney General.

*John Wesley Hall, Jr.*, by appointment of the Court, 485 U. S. 956, argued the cause and filed a brief for respondent.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In this case a reviewing court set aside a defendant's conviction of enhanced sentence because certain evidence was erroneously admitted against him, and further held that the Double Jeopardy Clause forbade the State to retry him as a habitual offender because the remaining evidence adduced at trial was legally insufficient to support a conviction.   Nothing in the record suggests any misconduct in the prosecutor's submission of the evidence.   We conclude that in cases such as this, where the evidence offered by the State and admitted by the trial court — whether erroneously or not — would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial.

Respondent Johnny Lee Nelson pleaded guilty in Arkansas state court to burglary, a class B felony, and misdemeanor theft.   He was sentenced under the State's habitual criminal

statute, which provides that a defendant who is convicted of a class B felony and "who has previously been convicted of . . . [or] found guilty of four [4] or more felonies," may be sentenced to an enhanced term of imprisonment of between 20 and 40 years. Ark. Stat. Ann. § 41–1001(2)(b) (1977) (current version at Ark. Code Ann. § 5–4–501 (1987)). To have a convicted defendant's sentence enhanced under the statute, the State must prove beyond a reasonable doubt, at a separate sentencing hearing, that the defendant has the requisite number of prior felony convictions. § 41–1005 (current version at Ark. Code Ann. § 5–4–502 (1987)); § 41–1003 (current version at Ark. Code Ann. § 5–4–504 (1987)). Section 41–1003 of the statute sets out the means by which the prosecution may prove the prior felony convictions, providing that "[a] previous conviction or finding of guilt of a felony may be proved by any evidence that satisfies the trier of fact beyond a reasonable doubt that the defendant was convicted or found guilty," and that three types of documents, including "a duly certified copy of the record of a previous conviction or finding of guilt by a court of record," are "sufficient to support a finding of a prior conviction or finding of guilt." § 41–1003 (current version at Ark. Code Ann. § 5–4–504 (1987)).[1] The defendant is entitled to challenge the State's evidence of his prior convictions and to rebut it with evidence

---

[1] Ark. Stat. Ann. § 41–1003 (1977) provided as follows:

". . . A previous conviction or finding of guilt of a felony may be proved by any evidence that satisfies the trier of fact beyond a reasonable doubt that the defendant was convicted or found guilty. The following are sufficient to support a finding of a prior conviction or finding of guilt:

"(1) a duly certified copy of the record of a previous conviction or finding of guilt by a court of record; or

"(2) a certificate of the warden or other chief officer of a penal institution of this state or of another jurisdiction, containing the name and fingerprints of the defendant, as they appear in the records of his office; or

"(3) a certificate of the chief custodian of the records of the United States Department of Justice, containing the name and fingerprints of the defendant as they appear in the records of his office."

of his own. § 41–1005(2) (current version at Ark. Code Ann. § 5–4–502(2) (1987)).

At respondent's sentencing hearing, the State introduced, without objection from the defense, certified copies of four prior felony convictions. Unbeknownst to the prosecutor, one of those convictions had been pardoned by the Governor several years after its entry. Defense counsel made no objection to the admission of the pardoned conviction, because he too was unaware of the Governor's action. On cross-examination, respondent indicated his belief that the conviction in question had been pardoned. The prosecutor suggested that respondent was confusing a pardon with a commutation to time served. Under questioning from the court, respondent agreed that the conviction had been commuted rather than pardoned, and the matter was not pursued any further.[2] The case was submitted to the jury,[3] which found that the State had met its burden of proving four prior convictions and imposed an enhanced sentence. The state courts upheld the enhanced sentence on both direct and collateral review, despite respondent's protestations that one of the convictions relied upon by the State had been pardoned.[4]

---

[2] There is no indication that the prosecutor knew of the pardon and was attempting to deceive the court. We therefore have no occasion to consider what the result would be if the case were otherwise. Cf. *Oregon* v. *Kennedy*, 456 U. S. 667 (1982).

[3] Prior to 1981, the Arkansas statute assigned responsibility for determining whether the State had proved the requisite number of prior convictions to the jury. Ark. Stat. Ann. § 41–1005 (1977). In 1981, the Arkansas General Assembly amended the statute to reassign this responsibility to the trial court. 1981 Ark. Gen. Acts 252 (Feb. 27, 1981) (codified at Ark. Stat. Ann. § 41–1005 (Supp. 1985) (current version at Ark. Code Ann. § 5–4–502 (1987))). Though respondent's trial took place after the 1981 amendments became effective, the trial court, evidently unaware of the amendments, permitted the jury to make the factual finding as to the number of prior convictions proved by the State. No objection was made by either side, and the error has no bearing on the double jeopardy issue before us.

[4] Respondent challenged the use of the pardoned conviction to enhance his sentence on direct appeal. The Arkansas Court of Appeals rejected

Several years later, respondent sought a writ of habeas corpus in the United States District Court, contending once again that the enhanced sentence was invalid because one of the prior convictions used to support it had been pardoned. When an investigation undertaken by the State at the District Court's request revealed that the conviction in question had in fact been pardoned, the District Court declared the enhanced sentence to be invalid. The State announced its intention to resentence respondent as a habitual offender, using another prior conviction not offered or admitted at the initial sentencing hearing, and respondent interposed a claim of double jeopardy. After hearing arguments from counsel, the District Court decided that the Double Jeopardy Clause prevented the State from attempting to resentence respondent as a habitual offender on the burglary charge. 641 F. Supp. 174 (ED Ark. 1986).[5] The Court of Appeals for the Eighth Circuit affirmed. 828 F. 2d 446 (1987). The Court of Appeals reasoned that the pardoned conviction was not admissible under state law, and that "[w]ithout [it], the state has failed to provide sufficient evidence" to sustain the enhanced sentence. *Id.*, at 449–450. We granted certiorari to review this interpretation of the Double Jeopardy Clause. 485 U. S. 904 (1988).[6]

---

this claim because of respondent's failure to make a contemporaneous objection to the use of that conviction. *Nelson* v. *State*, No. CA CR 83–150 (May 2, 1984), App. 13. Respondent later petitioned the Arkansas Supreme Court for postconviction relief, which was denied on the ground that respondent's "bare assertion" of a pardon, unsupported by any factual evidence, was an insufficient basis on which to grant relief. *Nelson* v. *State*, No. CR 84–133 (Nov. 19, 1984), App. 15.

[5] The District Court made clear, however, that the Double Jeopardy Clause did not prevent the State from resentencing respondent for the class B felony itself, under the sentencing rules applicable in the absence of proof of habitual criminal status. See 641 F. Supp., at 186.

[6] The State has attacked the ruling below on a single ground: that the defect in respondent's first sentence enhancement proceeding does not bar retrial. To reach this question, we would ordinarily have to decide two issues which are its logical antecedents: (1) whether the rule that the Double Jeopardy Clause limits the State's power to subject a defendant to suc-

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, see *Benton* v. *Maryland*, 395 U. S. 784 (1969), provides that no person shall "be subject for the same offence to be twice put in jeopardy." It has long been settled, however, that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction. *United States* v. *Ball*, 163 U. S. 662 (1896) (retrial permissible following reversal of conviction on direct appeal); *United States* v. *Tateo*, 377 U. S. 463 (1964) (retrial permissible when conviction declared invalid on collateral attack). This rule, which is a "well-established part of our constitutional jurisprudence," *id.*, at 465, is necessary in order to ensure the "sound administration of justice":

> "Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *Id.*, at 466.

---

cessive capital sentencing proceedings, see *Bullington* v. *Missouri*, 451 U. S. 430 (1981), carries over to noncapital sentencing proceedings, see *North Carolina* v. *Pearce*, 395 U. S. 711, 720 (1969); and (2) whether the rule that retrial is prohibited after a conviction is set aside by an *appellate* court for evidentiary insufficiency, see *Burks* v. *United States*, 437 U. S. 1 (1978), is applicable when the determination of evidentiary insufficiency is made instead by a federal habeas court in a collateral attack on a state conviction, see *Justices of Boston Municipal Court* v. *Lydon*, 466 U. S. 294 (1984). The courts below answered both questions in the affirmative, and the State has conceded both in its briefs and at oral argument the validity of those rulings. We therefore assume, without deciding, that these two issues present no barrier to reaching the double jeopardy claim raised here.

Permitting retrial after a conviction has been set aside also serves the interests of defendants, for "it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution." *Ibid.*

In *Burks* v. *United States*, 437 U. S. 1 (1978), we recognized an exception to the general rule that the Double Jeopardy Clause does not bar the retrial of a defendant who has succeeded in getting his conviction set aside for error in the proceedings below. *Burks* held that when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge. *Id.*, at 18; see *Greene* v. *Massey*, 437 U. S. 19, 24 (1978); *Hudson* v. *Louisiana*, 450 U. S. 40, 42–43 (1981).

*Burks* was based on the view that an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury. *Burks*, 437 U. S., at 16–17. Because the Double Jeopardy Clause affords the defendant who obtains a judgment of acquittal at the trial level absolute immunity from further prosecution for the same offense, it ought to do the same for the defendant who obtains an appellate determination that the trial court *should* have entered a judgment of acquittal. *Id.*, at 10–11, 16. The fact that the determination of entitlement to a judgment of acquittal is made by the appellate court rather than the trial court should not, we thought, affect its double jeopardy consequences; to hold otherwise "would create a purely arbitrary distinction" between defendants based on the hierarchical level at which the determination was made. *Id.*, at 11.

The question presented by this case—whether the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction—was expressly reserved in *Greene* v. *Massey, supra,* at 26, n. 9, decided the same day as *Burks.* We think the logic of *Burks* requires that the question be answered in the affirmative.

*Burks* was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary "trial errors" as the "incorrect receipt or rejection of evidence." 437 U. S., at 14–16. While the former is in effect a finding "that the government has failed to prove its case" against the defendant, the latter "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial *process* which is defective in some fundamental respect." *Id.*, at 15 (emphasis added).

It appears to us to be beyond dispute that this is a situation described in *Burks* as reversal for "trial error"—the trial court erred in admitting a particular piece of evidence, and without it there was insufficient evidence to support a judgment of conviction. But clearly *with* that evidence, there was enough to support the sentence: the court and jury had before them certified copies of four prior felony convictions, and that is sufficient to support a verdict of enhancement under the statute. See Ark. Stat. Ann. § 41–1003 (1977) (current version at Ark. Code Ann. § 5–4–504 (1987)). The fact that one of the convictions had been later pardoned by the Governor vitiated its legal effect, but it did not deprive the certified copy of that conviction of its probative value under the statute.[7] It is quite clear from our opinion in

---

[7] We are not at all sure that the Court of Appeals was correct to describe the evidence of this conviction as "inadmissible," in view of the Ar-

*Burks* that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause—indeed, that was the *ratio decidendi* of *Burks,* see 437 U. S., at 16–17—and the overwhelming majority of appellate courts considering the question have agreed.[8] The basis for the *Burks* exception to the general rule is that a reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence. A trial court in passing on such a

---

kansas statutory provision and the colloquy between court, counsel, and defendant referred to above. Evidence of the disputed conviction was introduced, and it was mistakenly thought by all concerned that the conviction had not been pardoned. Several years later it was discovered that the conviction had in fact been pardoned; the closest analogy would seem to be that of "newly discovered evidence." For purposes of our decision, however, we accept the characterization of the Court of Appeals.

[8] See, *e. g., United States* v. *Gonzalez-Sanchez,* 825 F. 2d 572, 588, n. 57 (CA1 1987); *United States* v. *Hodges,* 770 F. 2d 1475, 1477–1478 (CA9 1985); *Webster* v. *Duckworth,* 767 F. 2d 1206, 1214–1216 (CA7 1985); *United States* v. *Marshall,* 762 F. 2d 419, 423 (CA5 1985); *United States* v. *Bibbero,* 749 F. 2d 581, 586, n. 3 (CA9 1984); *United States* v. *Key,* 725 F. 2d 1123, 1127 (CA7 1984); *United States* v. *Tranowski,* 702 F. 2d 668, 671 (CA7 1983), cert. denied, 468 U. S. 1217 (1984); *United States* v. *Sarmiento-Perez,* 667 F. 2d 1239 (CA5), cert. denied, 459 U. S. 834 (1982); *United States* v. *Harmon,* 632 F. 2d 812 (CA9 1980); *United States* v. *Mandel,* 591 F. 2d 1347, 1373–1374 (CA4), rev'd on other grounds, 602 F. 2d 653 (1979), cert. denied, 445 U. S. 961 (1980); *Harris* v. *State,* 284 Ark. 247, 681 S. W. 2d 334 (1984); *People* v. *Rios,* 163 Cal. App. 3d 852, 870–871, 210 Cal. Rptr. 271, 283–284 (1985); *People* v. *Sisneros,* 44 Colo. App. 65, 606 P. 2d 1317 (1980); *State* v. *Gray,* 200 Conn. 523, 536–540, 512 A. 2d 217, 225–226 (1986); *Hall* v. *State,* 244 Ga. 86, 93–94, 259 S. E. 2d 41, 46–47 (1979); *People* v. *Taylor,* 76 Ill. 2d 289, 309, 391 N. E. 2d 366, 375 (1979); *Morton* v. *State,* 284 Md. 526, 397 A. 2d 1385 (1979); *Commonwealth* v. *Mattingly,* 722 S. W. 2d 288 (Ky. 1986); *Commonwealth* v. *Taylor,* 383 Mass. 272, 283–285, 418 N. E. 2d 1226, 1233–1234 (1981); *State* v. *Wood,* 596 S. W. 2d 394 (Mo.), cert. denied, 449 U. S. 876 (1980); *Roeder* v. *State,* 688 S. W. 2d 856, 859–860 (Tex. Crim. App. 1985); *State* v. *Lamorie,* 610 P. 2d 342, 346–349 (Utah 1980); *State* v. *Van Isler,* 168 W. Va. 185, 283 S. E. 2d 836 (1981).

motion considers all of the evidence it has admitted, and to make the analogy complete it must be this same quantum of evidence which is considered by the reviewing court.

Permitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to "obtai[n] a fair readjudication of his guilt free from error." *Burks, supra,* at 15; see *Tibbs* v. *Florida,* 457 U. S. 31, 40 (1982); *United States* v. *DiFrancesco,* 449 U. S. 117, 131 (1980); *United States* v. *Scott,* 437 U. S. 82, 91 (1978). Had the defendant offered evidence at the sentencing hearing to prove that the conviction had become a nullity by reason of the pardon, the trial judge would presumably have allowed the prosecutor an opportunity to offer evidence of another prior conviction to support the habitual offender charge. Our holding today thus merely recreates the situation that would have been obtained if the trial court had excluded the evidence of the conviction because of the showing of a pardon. Cf. our discussion in *Burks, supra,* at 6–7.

The judgment of the Court of Appeals is accordingly

*Reversed.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE BLACKMUN join, dissenting.

Under Arkansas law, a defendant who is convicted of a class B felony and "who has previously been convicted of . . . [or] found guilty of four [4] or more felonies" may be sentenced to an enhanced term of imprisonment ranging from 20 years to 40 years. Ark. Stat. Ann. § 41–1001(2)(b) (1977) (current version at Ark. Code Ann. § 5–4–501(b)(3) (1987)). At the March 1982 sentencing trial held after Johnny Lee Nelson pleaded guilty to the class B felony of burglary,[1] the State of Arkansas introduced evidence indicating that Nelson

---

[1] Nelson pleaded guilty to having taken $45.00 from a vending machine in 1979. See 641 F. Supp. 174, 175 (ED Ark. 1986).

had four prior felony convictions. Nelson protested that he had received a gubernatorial pardon for one of the convictions. The prosecutor and the trial judge disbelieved Nelson's claim, however, and the jury sentenced him to 20 years in prison. Three and a half years later—during which time Nelson, from jail, persistently implored Arkansas courts to investigate his pardon claim—a Federal District Court finally ordered the State to check its records. Lo and behold, it turned out that Nelson *had* been pardoned—and Arkansas soon announced its intention to try Nelson, once again, as a habitual offender.[2]

The majority holds today that, although Arkansas attempted once and failed to prove that Nelson had the four prior convictions required for habitual offender status, it does not violate the Double Jeopardy Clause for Arkansas to attempt again. I believe, however, that Nelson's retrial is squarely foreclosed by *Burks* v. *United States*, 437 U. S. 1

---

[2] The conviction for which Nelson was pardoned was a 1960 conviction for assault with intent to rape. He was pardoned in 1964 by Arkansas Governor Orval E. Faubus. App. 6 (text of pardon).

The record in this case shows that Nelson attempted unsuccessfully both during and after his trial to alert state authorities to this pardon. During the trial, Nelson stated that after serving three years in jail, he "had the case investigated and the governor at the time Faubus which *[sic]* gave me a pardon for my sentence." *Id.*, at 8 (abridged transcript of sentencing trial). He added: "[A]t my home I have documents of that pardon on that *[sic]*." *Id.*, at 9. The prosecutor did not question Nelson about this claim. Instead, the prosecutor moved to strike Nelson's testimony on the ground that Nelson was "confused as to the meaning of the pardon and a commutation." *Id.*, at 11. The prosecutor further stated: "I think the records are clear that are in the court . . . ." *Id.*, at 11–12. Ultimately, the trial judge, and Nelson's own defense counsel—who like the prosecutor had never investigated Nelson's claim of pardon—accepted this account. *Id.*, at 12.

After receiving the enhanced sentence, Nelson sought both on direct appeal and in state postconviction actions to have his claim investigated. Only after a Federal District Court ordered Arkansas to investigate Nelson's claim did Nelson's pardon finally come to light—in August 1985. *Id.*, at 1–4.

(1978), where we held that a State may not retry a defendant where it failed initially to present sufficient evidence of guilt. The majority rushes headlong past those facets of Nelson's case and of Arkansas law that reveal the prosecution's failure to present sufficient evidence of guilt in this case, in order to answer the open and narrow question of double jeopardy law on which the Court granted certiorari. By virtue of the majority's haste, Nelson now faces a new sentencing trial, and Arkansas will be able to augment the evidence it presented at Nelson's initial trial with evidence of prior convictions it opted not to introduce in the first place. Because this result embodies the classic double jeopardy evil of a State "honing its trial strategies and perfecting its evidence through successive attempts at conviction," *Tibbs* v. *Florida*, 457 U. S. 31, 41 (1982), I dissent.

I

The Double Jeopardy Clause is "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green* v. *United States*, 355 U. S. 184, 187 (1957). Reflecting this principle, we held in *Burks* that the prohibition against double jeopardy prevents retrial where a State's evidence at trial is found insufficient. See also *Hudson* v. *Louisiana*, 450 U. S. 40 (1981); *Greene* v. *Massey*, 437 U. S. 19 (1978). The *Burks* rule is based on the time-honored notion that the State should be given only "one fair opportunity to offer whatever proof it [can] assemble." *Burks, supra,* at 16. Unlike a finding of reversible trial error, which traditionally has not barred retrial, see *United States* v. *Tateo,* 377 U. S. 463 (1964); *United States* v. *Ball,* 163 U. S. 662 (1896), reversal for evidentiary insufficiency "constitute[s] a decision to the effect that the government has failed to prove its case." *Burks, supra,* at 15.

This case is troubling in a number of respects, not the least of which is that no one in the Arkansas criminal justice system seems to have taken Nelson's pardon claim at all seri-

ously. At bottom, however, this case is controlled by the *Burks* insufficiency principle. For under Arkansas' law of pardons, the State's evidence against Nelson in his sentencing trial was *at all times* insufficient to prove four valid prior convictions. The majority errs in treating this as a case of mere trial error, and in reaching the unsettled issue whether, after a trial error reversal based on the improper admission of evidence, a reviewing court should evaluate the sufficiency of the evidence by including, or excluding, the tainted evidence. See *Greene* v. *Massey, supra,* at 26, n. 9 (expressly reserving this question). This case has nothing to do with inadmissible evidence and everything to do with Arkansas' defective proof.

As the District Court noted in ruling for Nelson, Arkansas decisional law holds that pardoned convictions have no probative value in sentence enhancement proceedings. See 641 F. Supp. 174, 183 (ED Ark. 1986) (under Arkansas law: "[A] pardon renders the conviction a nullity. . . . [F]or purposes of the enhancement statute, a conviction which has been pardonned *[sic]* is not a conviction"). The District Court cited a 1973 decision of the Arkansas Supreme Court, *Duncan* v. *State,* 254 Ark. 449, 494 S. W. 2d 127 (1973), which held that a pardoned conviction cannot be counted toward the four prior convictions required under the State's sentence enhancement statute. The *Duncan* court, *id.,* at 451, 494 S. W. 2d, at 129, quoted with approval this Court's decision in *Ex parte Garland,* 4 Wall. 333, 380 (1867), where we stated: "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense." Drawing upon that state-court holding, the District Court in this case concluded: "The truth is that the state could not

have provided any evidence to rebut the petitioner's contention because it did not exist." 641 F. Supp., at 184.[3]

That Arkansas was not roused to investigate Nelson's pardon claim until long after his trial does not transform the State's failure of proof—fatal for double jeopardy purposes under *Burks*—into a mere failure of admissibility. As the District Court noted, Arkansas law establishes "that the prosecutor must carry the significant burden of ferreting out information regarding the validity of prior convictions whenever he seeks enhancement." 641 F. Supp., at 184 (citing *Roach* v. *State*, 255 Ark. 773, 503 S. W. 2d 467 (1973)). The delay in the discovery of Nelson's pardon does not change the essential fact that, as a matter of state law, the paper evidence of the disputed conviction presented by the prosecutor was devoid of probative value from the moment the conviction was expunged by the pardon. A pardon simply "blots out of existence" the conviction as if it had never happened. *Duncan* v. *State*, *supra*, at 451, 494 S. W. 2d, at 129. If, in seeking to prove Nelson's four prior convictions, the State had offered documented evidence to prove three valid prior convictions and a blank piece of paper to prove a fourth, no one would doubt that Arkansas had produced insufficient evidence and that the Double Jeopardy Clause barred retrial. There is no constitutionally significant difference between that hypothetical and this case.[4]

---

[3] The Court of Appeals did not disturb this determination of the District Court. Rather, it focused upon, and rejected, Arkansas' separate contention that double jeopardy does not attach to sentence enhancement trials. See 828 F. 2d 446, 449 (CA8 1987). That issue is not before this Court, Arkansas having conceded the validity of this aspect of the Court of Appeals' ruling. See *ante*, at 36–37, n. 4. The Court of Appeals also rejected as incorrect Arkansas' claim that, in cases of trial error, reviewing courts should not engage in *any* subsequent review for insufficiency, however measured. 828 F. 2d, at 450.

[4] The majority offers its own analogy: the discovery of Nelson's pardon, it states, is like "newly discovered evidence." *Ante*, at 41, n. 7. The majority overlooks a critical distinction. The emergence of new evidence in

In sum, Arkansas had "one fair opportunity to offer whatever proof it could assemble" that Nelson had four prior convictions, *Burks,* 437 U. S., at 16, but it "failed to prove its case." *Id.,* at 15. In reversing both the District Court and the Court of Appeals to give Arkansas a second chance to sentence Nelson as a habitual offender, the majority pays no more than lipservice to the *Burks* insufficiency principle. I would therefore hold that the Double Jeopardy Clause prohibits Arkansas from subjecting Nelson to a new sentencing trial at which it can "supply evidence" of a fourth conviction "which it failed to muster in the first proceeding." *Id.,* at 11.

## II

Even if I did not regard this as a case of insufficient evidence controlled by *Burks,* I could not join my colleagues in the majority. The question whether a reviewing court, in evaluating insufficiency for double jeopardy purposes, should look to all the admitted evidence, or just the properly admitted evidence, is a complex one. It is worthy of the thoughtful consideration typically attending this Court's decisions concerning the Double Jeopardy Clause.

The majority instead resolves this issue as if it had already been decided. *Ante,* at 40–41. In the majority's view: "It is quite clear from our opinion in *Burks* that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause." *Ibid. Burks* decided no such thing. At issue in *Burks* was whether a finding of initial insufficiency bars a defendant's retrial; we held that it did.

---

no way strips the old evidence of all probative value; while new evidence may cast doubt on the persuasiveness of the old evidence, its emergence does not render once sufficient evidence "insufficient." Arkansas' law of pardons, by contrast, robs evidence of a pardoned conviction of all probative value. It was thus not the *discovery* of Nelson's pardon that stripped his prior conviction of evidentiary weight, but rather the fact of the pardon itself. The discovery of Nelson's pardon merely called the parties' attention to this critical fact.

*Burks* did not presume to decide the completely distinct issue, raised by this case, of by what measure a reviewing court evaluates insufficiency in cases where a piece of evidence which went to the jury is later ruled inadmissible.   Indeed, had *Burks* settled or even logically foreclosed this issue, there would have been no reason for us specifically to reserve its resolution in *Greene* v. *Massey*, 437 U. S., at 26, n. 9—a case decided the very same day as *Burks*.[5]

It seems to me that the Court's analysis of this issue should begin with the recognition that, in deciding when the double jeopardy bar should apply, we are balancing two weighty interests: the defendant's interest in repose and society's interest in the orderly administration of justice.   See, *e. g.*, *United States* v. *Tateo*, 377 U. S., at 466.   The defendant's interest in avoiding successive trials on the same charge reflects the idea that the State

> "should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."   *Green* v. *United States*, 355 U. S., at 187–188.

---

[5] None of the numerous appellate court cases cited by the majority in support of its resolution of this issue, *ante*, at 41, n. 8, interpreted *Burks* as disposing of the sufficiency question before us.   Rather, with varying degrees of analysis, these courts evaluated the ramifications of including or excluding tainted evidence in a sufficiency analysis upon the interests of the defendant and of society—precisely the analytic approach I urge in the succeeding paragraphs.   See, *e. g.*, *United States* v. *Tranowski*, 702 F. 2d 668, 671 (CA7 1983) (concluding that policy arguments favor including tainted evidence in insufficiency analysis), cert. denied, 468 U. S. 1217 (1984); *Bullard* v. *Estelle*, 665 F. 2d 1347, 1358–1361 (CA5 1982) (using similar interest analysis in case involving retrial for sentence enhancement and concluding that inadmissible evidence should not be included in insufficiency analysis).

See also *Burks, supra,* at 11. Society's corresponding interest in the sound administration of justice reflects the fact that "[i]t would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States* v. *Tateo, supra,* at 466.

I do not intend in this dissenting opinion to settle what rule best accommodates these competing interests in cases where a reviewing court has determined that a portion of a State's proof was inadmissible. At first blush, it would seem that the defendant's interest is every bit as great in this situation as in the *Burks* situation. Society's interest, however, would appear to turn on a number of variables. The chief one is the likelihood that retrying the defendant will lead to conviction. See *United States* v. *Tateo, supra,* at 466 (noting society's interest "in punishing one whose guilt is clear"). In appraising this likelihood, one might inquire into whether prosecutors tend in close cases to hold back probative evidence of a defendant's guilt; if they do not, there would be scant societal interest in permitting retrial given that the State's remaining evidence is, by definition, insufficient.[6] Alternatively, one might inquire as to why the evidence at issue was deemed inadmissible. Where evidence was stricken for reasons having to do with its unreliability, it would seem curious to include it in the sufficiency calculus. Inadmissible hearsay evidence, for example, or evidence deemed defective or nonprobative as a matter of law thus might not be included. By contrast, evidence stricken in compliance with evidentiary rules grounded in other public policies — the policy of encouraging subsequent remedial measures embodied in Federal Rule of Evidence 407, for ex-

---

[6] It is no answer to say that prosecutors who initially lacked sufficient admissible evidence may gather more before a retrial. Such conduct is precisely what the Double Jeopardy Clause was designed to guard against. See *Tibbs* v. *Florida,* 457 U. S. 31, 41 (1982).

ample, or the policy of deterring unconstitutional searches and seizures embodied in the exclusionary rule—might more justifiably be included in a double jeopardy sufficiency analysis.[7]

The Court today should have enunciated rules of this type, rules calibrated to accommodate, as best as possible, the defendant's interest in repose with society's interest in punishing the guilty. Regrettably, the majority avoids such subtlety in its terse opinion. Instead, it opts for a declaration that our decision in *Burks*—although no one knew it at the time—was settling the issue on which we granted certiorari here. This is *ipse dixit* jurisprudence of the worst kind. I dissent.

---

[7] Arkansas suggests a "clear trial court ruling" test as a means of accommodating defense and societal interests. Under this test, where a trial court has affirmatively ruled that a piece of evidence is admissible, a State is entitled to rely on that ruling by counting this evidence in a subsequent insufficiency analysis—even if a reviewing court had ruled the evidence inadmissible. Brief for Petitioner 12. This test furthers a societal interest of which this Court took note in *United States* v. *Tateo*, 377 U. S. 463, 466 (1964): the interest in not deterring appellate courts from safeguarding defendants' rights. It is not at all clear, however, that Arkansas' test would authorize retrial in this case. Far from having refrained from introducing evidence of additional convictions in reliance on a trial court's determination that Nelson had not received a pardon, the prosecutor in this case seems to have done all he could to lead the trial court to believe that Nelson's pardon claim was meritless. See n. 2, *supra*.