A91A0076. CALHOON v. MR. LOCKSMITH COMPANY, INC.
et al.
(409 SE2d 226)

SOGNIER, Chief Judge.
Beverly Calhoon instituted an action against Mr. Locksmith Company, Inc. and its employee, Luann Gavin, alleging malicious prosecution. The trial court granted the defendants' motion for summary judgment, and Calhoon appeals.

The record reveals that on February 22, 1989, appellant sought the services of a locksmith when her son locked himself out of his car.

She contacted Master Locksmith Company, whose services she had used before, arranged for a key to be made, left her personal check in the amount of $68.50, which was the charge quoted to her by Master Locksmith's employee Renate Detlefs, and enlisted a neighbor to point out the car when the locksmith arrived. When she returned home some time later, appellant learned from her neighbor that the locksmith had found appellant's son's key on the floor board of the car and, since it was not necessary to make a new key, the charge would be "around thirty dollars" instead of the amount originally quoted to her. Appellant averred, in her affidavit submitted in opposition to appellees' motion for summary judgment, that at the time she was unaware that Master Locksmith itself was unable to perform the requested services and had contracted with Mr. Locksmith (hereinafter appellee) to perform them. Appellant averred that she called Master Locksmith and requested that Detlefs hold her check, since the work had cost less, and that Detlefs had agreed to do so. Appellant returned to Master Locksmith several weeks later to pick up her check and pay her bill, but Detlefs was not present, and the clerk on duty knew nothing about the transaction.

Appellant admits that on May 25, 1989, she received a letter from appellee notifying her that she had given it a bad check and giving her ten days to tender full payment for services rendered in the amount of $27.50 plus a service charge of $15.00. On July 11, 1989, appellant paid Master Locksmith $42.50. On the same day appellee, through its employee Gavin, swore out a warrant for appellant's arrest. At the hearing on the bad check charge, an order of nolle prosequi was entered at the request of the prosecutor.

1. Appellant contends summary judgment was improper because genuine issues of material fact remain for resolution by a jury. Appellant argues that because the check in issue was "drawn, issued, or indorsed to" Master Locksmith, appellee was not the "holder" of the check as defined in OCGA § 11-1-201 (20), and therefore had no right to prosecute appellant pursuant to OCGA § 16-9-20.

According to the affidavits of Allan Aitken, president of appellee, and Renate Detlefs, that company was in possession of the check and had the express authority of the payee, Master Locksmith, to "cash or deposit the check in any way it chose." It appears, therefore, that appellee was authorized to negotiate the check. However, the instrument was not properly endorsed by Master Locksmith, the payee, when presented to the bank by appellee for payment. Thus, the check did not meet the definition of "holder" in OCGA § 11-1-201 (20) and, accordingly, we agree with appellant that appellee was not the "holder" of the check under OCGA § 11-1-201 (20).

Nevertheless, the bank accepted the check as though it had been properly endorsed by Master Locksmith for negotiation. (We note

that the question of the bank's liability for its actions, however, is not presented in this action.) Although we agree that appellee does not meet the definition of "holder" in OCGA § 11-1-201 (20), nothing in that statute or in OCGA § 16-9-20 requires application of that definition to the criminal statute. Rather, OCGA § 11-1-201 states that all definitions therein are to be used "in this title" — that is, in Title 11 of OCGA, the Commercial Code. Because OCGA § 16-9-20 is not in the same title of the Code, by its terms OCGA § 11-1-201 (20), and specifically the definition of the term "holder," does not apply to OCGA § 16-9-20.

In construing the term "holder" in OCGA § 16-9-20, we are governed by established principles of statutory interpretation, including the cardinal imperative to look diligently for the intention of the legislature, keeping in view at all times both the "evil" and the "remedy." OCGA § 1-3-1 (a). It is obvious that, among other purposes, OCGA § 16-9-20 was enacted to punish the criminal behavior of knowingly passing bad checks, and to protect those legally authorized to negotiate checks given for value. Black's Law Dictionary (5th ed., p. 658) defines a "holder" as "the person who has legally acquired possession of [a negotiable instrument] by indorsement or delivery, and who is entitled to receive payment of the instrument." Given the obvious purpose of OCGA § 16-9-20, and applying the principle of statutory construction embodied in OCGA § 1-3-1 (b) that "[i]n all interpretations of statutes, the ordinary signification shall be applied to all words," we find that under the circumstances presented here, appellee was the "holder" of the check for purposes of OCGA § 16-9-20 and thus was entitled to prosecute appellant.

2. Appellant also asserts that summary judgment was improper because the notice given appellant by appellee did not meet the requirements for such a notice established by OCGA § 16-9-20 (a) (2) (B), and thus appellee was not entitled to the immunity from civil liability provided by OCGA § 16-9-20 (h).

Subsections (a) (2) (B) and (h) require *substantial* compliance with the form of notice given in the statute. We agree with appellant that the notice sent by appellee differed in several respects from the form required by the statute and may have been confusing (the notice stated, e.g., that the check had been issued to appellee). However, " '[t]he crime of issuing a bad check occurs at the time the check is issued if it is made or issued with the knowledge that it will not be honored. . . . The provisions in [OCGA § 16-9-20] relating to notice to the defendant and [her] subsequent failure to pay the amount due are evidentiary matters and are not prerequisites to the commission of or conviction of the offense of issuing a bad check.' [Cit.]" *Russell v. State*, 155 Ga. App. 555 (1) (271 SE2d 689) (1980). The notice serves to set up the presumption that because the drawer failed to

make the dishonored check good after notice, the original intent was fraudulent. See *Hall v. State*, 244 Ga. 86, 88 (259 SE2d 41) (1979). Thus, even assuming the notice sent was not in "substantial compliance" with the statute, appellant's fraudulent intent, and consequently the existence of probable cause for appellant's arrest, may still be shown.

In this case, in support of their motion for summary judgment, appellees proffered the affidavit of Gavin, who averred that when the check was dishonored by the bank, she contacted appellant, who "indicated that she would come into Mr. Locksmith's place of business to pay the money due to Mr. Locksmith," which was not done. This evidence negated any inference that appellant may have been confused about knowing the check was not good, overcoming differences between the instrument described in the notice and the actual dishonored check and establishing her fraudulent intent. See *Hall*, supra; see also *Wilson v. Home Depot*, 180 Ga. App. 218, 219 (348 SE2d 588) (1986). Appellant failed to rebut this evidence, and thus her pleadings were pierced as to the essential element of appellees' lack of probable cause in causing her arrest. Accordingly, the trial court did not err by granting summary judgment to appellees. See *Wilson*, supra at 220 (1), (2).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 19, 1991 —
RECONSIDERATION DISMISSED JULY 24, 1991.

*Theodore L. Marcus, Daniel W. Latimore, Jr.*, for appellant.
*Bassett, Gerry, Friend & Koenig, Rhonda L. Klein, William D. Friend*, for appellees.