JiLANDRIEU, Judge.
The principal issues in this case involve the admission of other crimes evidence and the effect of that admission on the sufficiency of the evidence underlying the defendant’s conviction for first degree murder.
FACTS
In the early morning of August 16, 1993, Roger Moliere found his brother, Al Moliere (Moliere), slumped over the steering wheel of his car in the parking lot of Johnny’s Bar in Davant, Louisiana. Upon discovering that Moliere had been shot and killed, the Plaque-mines Parish Sheriffs Office was notified. It was ascertained that Moliere had been murdered with a single shot to the head and a homicide investigation was instituted by Detective Warren Korach.

The Investigation

Witnesses agreed that Moliere had spent the latter part of the previous evening drinking in a another bar in the area, Alice’s Sweet |2Shop (Alice’s).[1] Edwin A. Bolton, the bartender/manager of Alice’s, stated that when he closed the bar at midnight the preceding evening, both Moliere (in an intoxicated condition) and Reginald Reddick (a/k/a “Uglee”) were there. Kevin Enealade, the disc jockey at the bar (and Reddick’s cousin), asserted that although many people (including Reginald Reddick) were standing near the road as Moliere left Alice’s parking lot, Moliere left alone. Darrell Williams (in his first of three differing statements) told Detective Korach that as Moliere was ready to leave Alice’s at closing time, Reginald Red-dick requested a ride from Moliere, got into the ear with him, and the two men left Alice’s driving in a northerly direction on River Road. Deborah Isidore told Detective Ko-rach that leaving Alice’s shortly after Moliere, she overtook his car on River Road, recognized Moliere as the driver, and followed him until it turned into the empty parking lot of Johnny’s Bar. Ms. Isidore stated that Moliere appeared to have one passenger in his ear but that she could not identify the passenger.
*553 In response to questioning, Reddick denied owning a gun, getting a ride from Moliere, or killing Moliere. However, papers and family photos belonging to the deceased[2] were retrieved from the river levee near Reddick’s home.[3]
On August 17th, Detective Korach again questioned Williams. This time Williams contended that on the night of the murder he left | ^Alice's, walked along the River Road, and noticed Reddick walking behind him. Moliere stopped his car, gave both men a ride, and drove to Johnny’s Bar which was closed. At the request of Reddick, Moliere drove a short distance to Reddick’s aunt’s house and then returned to Johnny’s bar. As the three men sat in Moliere’s car in the bar parking lot, Reddick reached over, grabbed Moliere around the neck, and shot him with a pistol. Reddick took Moliere’s wallet, exited the car, and ran up the river levee. Williams exited the ear and ran home.[4] Williams claimed that he was unable to see Reddick’s gun.
Shortly after Williams’ second statement, Reddick was arrested and in September 1993 he was indicted for the first degree murder of Moliere. Several months later, a young boy found a .357 magnum pistol with the initials “R.R.” carved into the handle. The weapon was recovered on the batture approximately three hundred feet north of where Moliere’s papers and family photos were found. It contained one spent round and five live rounds of ammunition.

Other Crimes Evidence

In the course of the investigation, other incidents involving Reddick and a gun similar to the recovered weapon were disclosed to investigating officers. Emeal Wilson claimed that four days prior to Moliere’s murder Reddick robbed him at gun point in the parking lot of Johnny’s Bar. According to Wilson, he purchased a $40 rock of cocaine from Reddick with a hundred dollar bill, but when he requested his change Reddick demanded all the money at gunpoint. In addition, Reddick was involved in a 1991 domestic altercation with Marilyn Moliere (the mother of his Lchild) which resulted in Reddick putting a gun in the face of her uncle, Roger Moliere (the brother of the deceased), in the parking lot of Johnny’s Bar. The State filed notices of intent to introduce the testimony of Wilson and the Molieres pertaining to these incidents. After a hearing on the matter, the trial court ruled the other crimes evidence admissible.

The Trial

At trial, Williams contended that Moliere left Alice’s with Reddick and Denair Riley[5], that the three men picked him up as he was walking along the river road, that Reddick demanded money from Moliere and then shot him,[6] and that Reddick then threatened him (Williams), demanding his silence.
Consistent with their earlier statements, Kevin Encalade testified that Moliere was alone when he drove out of Alice’s parking lot and Deborah Isidore testified that after leaving Alice’s she drove directly behind Moliere on River Road and it appeared that he had only one passenger (whom she described as a tall man) in the car with him. During Ms. Isidore’s testimony, Reddick was asked to stand and Isidore stated that she did not find Reddick to be tall.[7] Deona Sims (Ms. Isidore’s passenger on the night of the murder) testified, corroborating Ms. Isidore’s testimony and adding that, while still a long *554 distance behind Moliere’s car, she thought that she saw him slow down and pick up a passenger.
IsA firearms expert testified that bullet fragments recovered from the victim’s head[8] were compared to markings on rounds shot from the recovered weapon and found to be similar but not identical. He explained, however, that due to extensive damage it was necessary to replace a broken ejector rod in order to fire the gun and such a replacement could account for slight differences in the markings on the recovered bullet fragments and the test-fired casings.
Emeál Wilson testified about the drug deal which became an armed robbery and identified the gun recovered from the river as similar to the one used by Reddick in that incident. Roger Moliere testified as to the incident in Johnny’s Bar and identified the gun as similar to the one used by Reddick in that incident. Marilyn Moliere corroborated Roger Moliere’s testimony as to the incident at Johnny’s Bar and also identified the gun as similar to a gun which Reddick had “pulled on her” on previous occasions. Although she could not conclusively identify the gun recovered in the river as Reddick’s gun, she remarked that Reddick’s gun did have his initials, “R.R.”, carved into the handle.[9]
Based on this evidence, the jury returned a unanimous verdict, finding Reddick guilty as charged. Reddick was later sentenced to life imprisonment without the benefit of probation, parole or suspension of sentence.
| (¡DISCUSSION
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, this Court must first determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When the entirety of the evidence both admissible and inadmissible is sufficient to support the conviction, the accused is not entitled to an acquittal and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. State v. Hearold, 603 So.2d 731, 734 (La.1992). If there has been trial error which is not subject to a harmless error analysis, then the accused must receive a new trial but is not entitled to an acquittal even if the admissible evidence, considered alone, is insufficient to support the conviction. Id. (citing Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)).

Sufficiency of the Evidence

First degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm and is engaged in the perpetration or attempted perpetration of armed robbery, first degree robbery, or simple robbery. La.Rev.Stat. Ann. 14:30(A)(1) (West Supp.1995). Specific intent to kill or inflict great bodily harm can be inferred from the fact that the defendant shot the victim in the head at close range. State v. Noble, 425 So.2d 734, 736 (La.1983) (citation omitted).
foWhen viewed in the light most favorable to the prosecution, the evidence is sufficient to prove beyond a reasonable doubt all the elements of first degree murder. Moliere was shot in the head at close range and an eyewitness (Williams) testified that Reddick first demanded money, then put a gun to Moliere’s head and shot him. Moreover, Moliere’s personal papers and a gun with the initials R.R. carved into the handle were recovered in the vicinity of the house where *555 Reddick was staying on the • night of the murder. The recovered gun was identified by the eyewitness as the murder weapon and was identified by three other witnesses as similar to a gun owned and allegedly used by Reddick. Although some inconsistencies exist between Williams’ trial testimony, his pri- or statements, and the testimony of Encalade and Isidore, Williams was cross-examined extensively as to these inconsistencies. The jury apparently found Williams to be a credible witness and we will not disturb that determination on appeal. Accordingly, Red-dick is not entitled to an acquittal.

Other Crimes Evidence

Through the testimony of Wilson and the Molieres, evidence was admitted pertaining to Reddick’s involvement in a drug deal and a 1991 domestic dispute. Admission of evidence of other crimes or misconduct creates the risk the defendant will be convicted of the present offense simply because he is a bad person. Accordingly, such evidence is not admissible except in limited situations.[10] When it would tend to prove a material issue and have independent relevance other than showing that the defendant is a person of bad character, evidence may be admitted to show Igmotive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. State v. Prieur, 277 So.2d 126 (La.1973); La.Code Evid.Ann. art. 404(B)(1) (West pre-1995).
The trial court ruled the evidence admissible to show intent. In determining the evidence admissible to show intent, the trial court relied upon State v. Jackson, 625 So.2d 146, 150 (La.1993) which allows proof of “similar but disconnected crimes to show the intent with which the act charged was committed,” where “the element of intent is regarded as an essential ingredient of the crime charged.” In that case involving a defendant charged with molesting his granddaughter, the Louisiana Supreme Court held that evidence of the defendant’s similar behavior with his daughters when they were young was admissible to show intent and plan even though it was remote in time.
Jackson, however, is not applicable to this case. Specific criminal intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act, La.Rev.Stat.Ann. 14:10(1) (West 1986), and may be proved by direct evidence or inferred from the actions of the defendant or the circumstances present. Because the specific intent to kill is clearly evident in this ease from the fact that Moliere was killed by a gun fired directly into his head, it is undisputed that the perpetrator of this offense intended to commit murder and evidence of extraneous crimes to show the defendant’s criminal intent was unnecessary.
In addition, the trial court ruled the evidence admissible to show that the defendant had committed similar crimes which were probative of |9his guilt of the crime charged. The trial court found it significant that the drug deal turned armed robbery took place four days before the murder in the same location, the same time of day, and with the same weapon. Likewise, the trial court found Reddick’s altercation with Roger Moliere “probative of the system engaged by the defendant” because it occurred at the same location, involved the same weapon, and resulted in Reddick pointing a pistol in Moliere’s face. We disagree.
For evidence of other crimes to be admissible to show identity, the crimes involved must be “so distinctive as to lead to the conclusion that they were the work of the same person.” State v. Code, 627 So.2d 1373, 1383 (La.1993), cert denied, — U.S. -, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). This high standard is not met where the only similarity with the crime charged is the general location of a neighborhood bar and the use of a gun close to the victims’ faces, particularly in light of the fact that there is no evidence of a domestic dispute or drugs *556 being involved in the murder and one incident was remote in time. Having little, if any, probative value for the purposes of identity, the testimony constituted character evidence. Thus, although the witnesses’ testimony identifying the murder weapon as similar to the one owned by Reddick was admissible, the evidence of other crimes was not and we cannot say that this error is harmless. As there has been trial error which was not harmless, the accused is entitled to a new trial. See State v. Hearold, 603 So.2d at 733.
Accordingly, we vacate the conviction and sentence, and remand the matter for further proceedings in accordance with the law.
CONVICTION AND SENTENCE VACATED; REMANDED.

. The police report indicates that the distance between the two bars is approximately five miles.

. The next day the police searched the river in a metal boat near where the papers were found but were unsuccessful in finding the murder weapon.

. Reddick was not a full-time resident but at the time of the murder he was staying at the home of relatives (Paul, Joyce, and Kevin Encalade) near Davant, Louisiana.

. Williams claimed in his second statement that he got a ride part of the way from a man in a truck, but admitted later at trial that his statement that he had gotten a ride was untrue.

. Denair Riley invoked his Fifth Amendment right and refused to testify.

. Williams first related this slightly different version of events in a statement given to police on December 8, 1993.

. It should be noted Williams testified that he is 6'3".

. One fragment of the bullet casing was found on the seat between Moliere’s legs and other fragments remained in his head. At the autopsy, it was determined that the exit wound was actually created by a piece of bone.

. Marilyn Moliere did not directly describe the incidents which occurred in the home between her and Reddick. However, testimony as to these incidents had been specifically precluded by the trial court during the hearing prior to trial. The defense did not object to Marilyn mentioning the instances which occurred in her home; however, the defense alleges as assignment of error number four that the admission of her testimony was trial error. We will assume that the defense objects to Ms. Moliere’s entire testimony, inasmuch as it mentions alleged possible spousal abuse and corroborates the testimony of Roger Moliere as to the altercation at Johnny's Bar.

. A review of the record indicates, however, that the jury was given no limiting instructions pertaining to the other crimes evidence.