**Curtis J. BEST, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 12–CM–857.**

District of Columbia Court of Appeals.

Argued April 11, 2013.
Decided May 30, 2013.

---

Jamison Koehler, for appellant.

Stephen Rickard, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, John P. Mannarino, and Kasia Preneta, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and EASTERLY, Associate Judges, and SCHWELB, Senior Judge.

FISHER, Associate Judge:

Appellant Curtis J. Best challenges his convictions for assault, attempted possession of a prohibited weapon (PPW (b)), and malicious destruction of property,[1] claiming that they were based on insufficient evidence. He also asserts that the trial court improperly admitted hearsay evidence and violated his Sixth Amendment right to confrontation. We affirm the judgment as to destruction of property, but reverse and remand for further proceedings as to assault and attempted PPW (b).

## I. Background

Appellant and Lawrence Robinson are stepbrothers who lived in one side of their father's duplex, which was comprised of two units and a common basement, all separated by locked doors. Sometime after 10:30 p.m. on the evening of April 27, 2012, appellant's father, Herbert Best, came home to find that the lock on the door leading from the basement to his side of the duplex was broken, and the door jamb was damaged. Appellant later told his father that he had broken the door in order to gain access to his father's side of the duplex because it was locked.

At trial, Officer Terrence Eberhardt testified that he and his partner responded to a radio call regarding an "assault in progress" at the duplex at approximately eight or nine o'clock that evening. Upon arrival, Officer Eberhardt saw both appellant and

---

1. D.C.Code § 22–404 (2001 & 2011 Supp.); D.C.Code § 22–4514(b), –1803 (2001 & 2011 Supp.); D.C.Code § 22–303 (2001).

Robinson standing outside the house near the fence line. Both men had visible injuries and bloodstained clothes, Robinson apparently bleeding from the hand, appellant with blood on his face. Officer Eberhardt described Robinson as "hysterical" and "frantic," pacing back and forth, and waving his hand.

After describing Robinson's demeanor, Officer Eberhardt recounted what Robinson told him had transpired that evening:

> What [Robinson] stated was he was laying in the bed, and the defendant came up to him, approached him and told him that he looked like he had been, he was selling drugs. So, he needed a haircut, and he looked and the defendant was standing over top of him with a knife.... Trying to cut, cut his, cut the complaining witness's hair.

Officer Eberhardt also testified that he saw a trail of blood throughout the house. There were bloody bed sheets and a bloodstained knife in the bedroom that Robinson identified as his. Officer Eberhardt also saw severed dreadlocks in the hallway.

Officer Eberhardt did not specify where his conversation with Robinson took place or over what period of time. Nor did he describe the content of questions asked or answers given, giving no indication whether appellant blurted out any information. Instead, he testified, "I can't quote specifics," and proceeded to summarize Robinson's statements from that evening. Officer Eberhardt's testimony laid the foundation for admitting photographs of the scene and of the weapon, which, along with Eberhardt's own observations and his summary of Robinson's statements, served as the only evidence regarding the assault and at-tempted PPW (b) charges. Robinson did not testify.

Appellant objected on hearsay and confrontation grounds to Officer Eberhardt's summary of Robinson's statements. The government argued that Robinson's statements were admissible under the excited utterance exception to the hearsay rule, citing, among other things, Robinson's demeanor. Moreover, the government argued that Robinson's statements were nontestimonial because they were made during an ongoing emergency and, as a result, were not barred from admission by the Sixth Amendment's Confrontation Clause. Judge Alprin admitted Robinson's statements, saying:

> So, it's not something the Government has, the police have attempted to obtain after the emergency is resolved. That is the distinction. I remember now. That's actually my recollection of the case.[2] I think I'm going to permit this testimony.

During the trial, Judge Alprin also heard argument from both sides and asked questions regarding the "excited utterance doctrine." In his findings of fact after the trial, he explained:

> It is a Crawford case ... and before, while the situation was being calmed down what was being said by the complaining witness Robinson to the officer I think is admissible, and it was an excited, it seems to have been an excited utterance....

After presiding over the non-jury trial, Judge Alprin found appellant guilty of all charges but unlawful entry. He granted appellant's motion for judgment of acquittal on that charge because the government had failed to show that appellant was not permitted to be in his father's side of the

---

**2.** This statement apparently refers to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which the parties had just discussed.

duplex. Indeed, appellant's father testified that "he's welcome."

## II. Analysis

Appellant contends that the trial court erred in admitting Robinson's statements, and that there was insufficient evidence to support his convictions. We consider each issue in turn.

### A. Admission of Robinson's Statements

■ Robinson's statements had to clear two hurdles to admissibility at trial—the rule against hearsay and the Sixth Amendment's Confrontation Clause. The proponent of the evidence bears the burden of demonstrating its admissibility. *Young v. United States,* 63 A.3d 1033, 1038 n. 12 (D.C.2013) (addressing a confrontation issue and stating, "The government, as the proponent of [the] testimony, had the burden of establishing the basis for its admissibility when appellant objected to it."); *In re M.L.H.,* 399 A.2d 556, 558 (D.C.1979) ("[O]n proper objection it is clearly the burden of the party seeking its admission, to identify the appropriate [hearsay] exception and to demonstrate that the testimony fell within it."). Concluding that admission of the statements violated the Confrontation Clause, we do not address appellant's hearsay challenge.

■ The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." This core constitutional protection prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). A statement is testimonial if it is

> [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact for use in the prosecution or investigation of a crime, or a statement made under circumstances objectively indicat[ing] that the declarant's primary purpose [was] to establish or prove past events potentially relevant to later criminal prosecution.

*Young,* 63 A.3d at 1039–40 (footnotes and internal quotation marks omitted) (alterations in original).[3]

■ Depending on the attendant circumstances, the primary purpose of the declarant or the primary purpose of responding officers may take greater prominence, though both are relevant to the inquiry. Where a statement is made "in response to questioning ..., a principal factor to be considered is the primary purpose of the interrogation." *Graure v. United States,* 18 A.3d 743, 756–57 (D.C. 2011). This is an objective, rather than a subjective, inquiry, focusing on " 'the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.' " *Young,* 63 A.3d at 1040 (quoting *Michigan v. Bryant,* —— U.S. ——, 131 S.Ct. 1143, 1156, 179 L.Ed.2d 93 (2011)). "A situation

---

**3.** Whether individual statements were testimonial is a question of law that we review *de novo. Graure v. United States,* 18 A.3d 743, 756 n. 16 (D.C.2011); *Thomas v. United States,* 978 A.2d 1211, 1225 (D.C.2009). However, we will defer to the trial court's findings of fact regarding the circumstances in which a statement was made. *Compare Michigan v. Bryant,* —— U.S. ——, 131 S.Ct. 1143, 1156, 179 L.Ed.2d 93 (2011) ("The circumstances in which an encounter occurs ... are clearly matters of objective fact."), *with id.* at 1158 ("whether an emergency exists and is ongoing is a highly context-dependent inquiry").

that is 'fluid and somewhat confused,' . . . is likely to have 'lacked any formality that would have alerted [the victim] to or focused him on the possible future prosecutorial use of his statements.'" *Graure*, 18 A.3d at 757 (quoting *Bryant*, 131 S.Ct. at 1166).

Here, the government argued that Robinson's statements were made during an ongoing emergency and were therefore nontestimonial. Statements made in such a context have been held to be nontestimonial because "an emergency focuses the participants on something other than 'prov[ing] past events potentially relevant to later criminal prosecution.'" *Bryant*, 131 S.Ct. at 1157 (quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)) (alteration in original). The circumstances generally are unstructured and informal, and the participants' likely primary purpose is to address the emergency. *See Young*, 63 A.3d at 1040 ("A statement made primarily for a [non-evidentiary] purpose, such as enlisting police assistance to meet an ongoing emergency, is not testimonial.") (internal quotation marks omitted); *Graure*, 18 A.3d at 757 (citing *Bryant*, 131 S.Ct. at 1166) (informality of circumstances surrounding an ongoing emergency increases likelihood that statements are nontestimonial).

■ "[W]hether an emergency exists and is ongoing is a highly context-dependent inquiry." *Bryant*, 131 S.Ct. at 1158. The duration of the "ongoing emergency" is of central importance because what begins as a nontestimonial statement may evolve over time into a testimonial one. *See id.* at 1159 (" '[A] conversation which begins as an interrogation to determine the need for emergency assistance' can 'evolve into testimonial statements.'") (quoting *Davis*, 547 U.S. at 828, 126 S.Ct. 2266); *Long v. United States*, 940 A.2d 87, 98 n. 12 (D.C.2007) (same).

We faced such a situation in *Lewis v. United States*, 938 A.2d 771 (D.C.2007), where we distinguished between nontestimonial statements given during an emergency, and statements that became testimonial once any emergency was resolved. Police, responding to a 9–1–1 call regarding an assault occurring in a car, found Ms. Coleman seated inside, bleeding from her head and face. *Id.* at 774. One officer described her demeanor as "excited, crying, agitated, very emotional, and very, very upset." *Id.* (internal quotation marks omitted). After summoning an ambulance, Officer Conway asked what had happened. Ms. Coleman gave a brief, but graphic, description of events. The officer then asked her to step out of the car. She did so, and then sat down on the curb. Trying to calm her, Officer Conway asked for more details, which Ms. Coleman provided. *Id.*

"We conclude[d] that the initial statements, recounting the basic facts of the assault, were non-testimonial because the primary purpose of Officer Conway's questioning was to enable him to respond most effectively to an ongoing emergency." *Id.* at 780 (internal quotation marks omitted). "However, we conclude[d] that the more detailed account that Ms. Coleman provided a short time later, after she had alighted from the car and sat down on the curb, was testimonial because at that time the emergency had dissipated." *Id.*

We are unable to conduct such discriminating analysis in this case. On this record, we cannot parse which portions of Robinson's statements would have been admissible and which would not. It is not clear how quickly Officer Eberhardt learned that only appellant and Robinson were involved in the bloody fracas. Nor is it apparent which portions of Robinson's statements may have been blurted out spontaneously and which directly respond-

ed to the officer's questions. We cannot glean from the record how long any emergency lasted,[4] or when, where, or under what circumstances the various components of Robinson's statements were given, much less their number or individual content. *Cf. Bryant*, 131 S.Ct. at 1161 ("[T]he primary purpose of the interrogation will be most accurately ascertained by looking to the contents of both the questions and the answers.").

Although the trial court stated that an "ongoing emergency" existed, it did not make any factual findings as to the duration of that emergency. It was impossible on this record for the trial court to "determine in the first instance when any transition from nontestimonial to testimonial occur[ed], and [to] exclude 'the portions of any statement that have become testimonial ....'" *Bryant*, 131 S.Ct. at 1159 (internal citation omitted) (quoting *Davis*, 547 U.S. at 829, 126 S.Ct. 2266).

It is quite possible that, as in *Lewis*, at least some of Robinson's statements would be nontestimonial, given the circumstances Officer Eberhardt faced upon arrival— Robinson was "frantic," and he and appellant were bloodied when the officers responded to a call for an assault in progress. However, it is also likely that some of Robinson's statements were made after any emergency was resolved, and were therefore testimonial in nature. But the record is insufficient to evaluate the testimonial nature of the individual statements made by Robinson.

■ Because Robinson's statements were the crux of the government's case, and the error implicates appellant's constitutional right to confrontation, we cannot say the error is harmless beyond a reason-

able doubt. *See Gardner v. United States*, 999 A.2d 55, 58 (D.C.2010) ("Where a statement is admitted into evidence in violation of the Confrontation Clause of the Sixth Amendment and the error was objected to below, we review the error for harmlessness beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)."). We therefore reverse appellant's convictions for assault and attempted PPW (b). However, this error does not affect appellant's conviction for destruction of property, which was based solely on the physical evidence and appellant's admissions to his father.

## B. Sufficiency

We now consider appellant's challenge to the sufficiency of the evidence. We must do so even as to the assault and PPW (b) convictions, which we are reversing, in order to determine whether a retrial is permitted. *Burks v. United States*, 437 U.S. 1, 16–18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (retrial permitted where reversal is based on trial error, but not where evidence was insufficient to sustain conviction). Evidence is sufficient to support a verdict if " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)). We evaluate sufficiency based on the evidence that was before the trial court, even if it was admitted erroneously. *Hicks–Bey v. United States*, 649 A.2d 569, 583 (D.C. 1994) (citing *Lockhart v. Nelson*, 488 U.S.

---

4. The record's only indication as to the timeframe of events is that the altercation began sometime before 8:00 or 9:00 p.m., and had

been resolved sometime prior to Herbert Best's return to the house after 10:30 p.m.

33, 40–42, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)).

 The physical evidence and appellant's admissions that he broke the door in order to gain entry established all the elements of destruction of property. Contrary to appellant's claims, no special showing of intent was necessary beyond his admissions about purposefully breaking the door. *See Phenis v. United States,* 909 A.2d 138, 163 (D.C.2006) ("[T]o establish that appellant acted maliciously, the government is required to prove that he acted with a conscious disregard of a known and substantial risk of the harm which the statute is intended to prevent. [A]lthough malice may be inferred from intentional wrongdoing, the only intent required to be proven is the intent to do the act which results in the injury—in other words a general intent." (internal citations and quotation marks omitted) (second alteration in original)).

 Robinson's statements, Officer Eberhardt's observations, and photographic evidence provided sufficient evidence to support the findings of guilt as to the assault and attempted PPW (b) charges. Remand for a new trial is the proper remedy where the evidence was sufficient but its erroneous admission demands reversal. *See Lockhart,* 488 U.S. at 34, 109 S.Ct. 285 ("[W]here the evidence offered by the State and admitted by the trial court— whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial.").

### III. Conclusion

For the foregoing reasons, we affirm the judgment as to destruction of property, but reverse the assault and PPW (b) convictions, remanding those charges to the trial court for further proceedings consistent with this opinion.

*It is so ordered.*