*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CO-938

ROSS GREEN, APPELLANT,

v.

UNITED STATES, APPELLEE.

07/20/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF2-16529-12)

(Hon. Robert I. Richter, Trial Judge)

(Argued October 15, 2015                    Decided July 20, 2017)

*Kerri L. Ruttenberg*, with whom *William D. Coglianese* was on the brief, for appellant.

*Kristina L. Ament*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Christian Natiello*, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

Opinion for the court by *Associate Judge* FISHER.

Dissenting opinion by *Senior Judge* RUIZ at page 22.

FISHER, *Associate Judge*: After a bench trial, appellant Ross Green was

convicted of, among other offenses, possession of 3, 4-

methylenedioxymethcathinone hydrochloride ("MDMC") with intent to distribute ("PWID"), a felony.[1]  He did not file a direct appeal, but now challenges the denial of his motion for a new trial.  We affirm.

## I. Background

### A. The Trial

On September 20, 2012, police officers entered appellant's home to execute a search warrant and seized an assortment of pills, tablets, and capsules of various colors, and a pink ziplock bag of orange powder.  (The conviction under review here relates only to MDMC.)  The police also seized a digital scale, an assault rifle, a handgun, magazines for the rifle and handgun, and assorted ammunition.  Danielle LaVictoire, who was qualified without objection as an expert in controlled-substance analysis, testified that one partial tablet, two capsules, and the ziplock bag of powder tested positive for MDMC.  Her report, admitted as Exhibit

---

[1]  D.C. Code § 48-904.01 (a) (2012 Repl.).  Appellant was also convicted of a number of misdemeanor charges involving drugs and guns, but he does not contest those convictions.  Appellant was acquitted entirely of two PWID charges related to other drugs and four were reduced to the lesser-included offense of possession.  He was also acquitted of the corresponding charges of possession of a firearm during a crime of violence and "while armed" enhancements.

2.2, described the drug more formally as "3, 4-methylenedioxymethcathinone (methylone) hydrochloride." She also said that, based on the amount of MDMC powder in the two capsules found in Green's apartment, "you might be able to make 82 capsules worth" of MDMC from the quantity of powder in the ziplock bag.[2]

Detective George Thomas was qualified without objection as an expert in the distribution and use of illegal drugs. He testified that MDMC is a different compound than methylenedioxymethamphetamine ("MDMA" or "ecstasy"), but that they are chemically similar—MDMC is only "one analog or one compound different from Ecstasy or MDMA." He also testified that MDMC is more potent than MDMA, that the "street name" for MDMC is "molly," and that the amount of MDMC found in appellant's apartment was inconsistent with possession for personal use. The cell phone seized from appellant's apartment contained numerous text messages, from May and June of 2012, in which he discussed selling a variety of drugs, including "molly," to other individuals. Those text messages did not use the initials MDMC.

---

[2] She arrived at this estimate by dividing the 8.2 grams of powered MDMC in the ziplock bag by the 0.1 grams found in each MDMC capsule. Appellant now challenges this estimate and Ms. LaVictoire's qualifications to provide it. However, appellant did not object to her expertise at trial, nor did he present any evidence to rebut her estimate that the powder might produce 82 capsules.

Appellant called Dr. Jeffrey Smith, an expert in internal and emergency medicine and continued care, to testify that appellant had prescriptions for many of the drugs seized from his apartment, though not for the MDMC. Although appellant's counsel adamantly asserted that MDMC was not "molly," he presented no evidence to support that claim and called no other witnesses. Appellant did not testify.

When announcing his finding on June 12, 2013, Judge Richter observed that "the evidence is overwhelming . . . that the MDMC was possessed with the intent to distribute." He commented that while "the quantity alone might not be enough, [and] the text messages alone might not be enough, . . . together they clearly constitute proof beyond a reasonable doubt."

### B. The Motion for a New Trial

On June 17, 2013, five days after the finding of guilt, appellant asked the court to extend the deadline for filing a motion for a new trial. The court granted the request on June 19, giving appellant until September 9 to file a Rule 33 motion. Appellant's new counsel asked for a second extension on July 8, and the court

granted that enlargement of time on July 9, giving appellant until October 9 to file his motion for a new trial.

Nearly four months after the finding of guilt, on October 9, 2013, appellant filed a motion for a new trial pursuant to Super. Ct. Crim. R. 33 ("Rule 33"). With that motion, he submitted an affidavit, signed on October 7, 2013, from Michael Radon, who had over forty years of experience working as a substance-abuse counselor or supervisor in Massachusetts, the West Indies, and Maryland. Since 2011, Mr. Radon has worked as a consultant and expert witness. He averred that "molly" was the street name for MDMA, not MDMC, and that the two substances had "unique, non-overlapping street names."

Appellant also submitted the affidavit of Dr. Wayne Duer, a forensic toxicologist in Florida, signed on October 4, 2013, who said that the quantity of MDMC found in appellant's apartment "typically would yield significantly less than between 16 and 41 capsules, tablets or caplets of MDMC." He based this statement on "a DEA publication" about the amount and form in which MDMC is normally distributed and his prediction that some powder would be lost in the process of filling the MDMC capsules. Both proposed experts stated in their affidavits that MDMC was one of a class of drugs to which users were known to

develop a tolerance, thus necessitating taking more of the drug to achieve the same "high." As Judge Richter commented, these statements about tolerance and typical dose seem to be intended as "new evidence suggesting personal use."

In addition to asserting that "molly" is not used to refer to MDMC, appellant's motion for a new trial attacked other aspects of Detective Thomas's testimony. Thomas had said that MDMC is more potent than MDMA, but the affiants swore the opposite was true. The detective also testified that MDMC is not methylone, but Dr. Duer swore that "MDMC is methylone."

After briefing by the parties, Judge Richter denied the motion in a short order, concluding that "[t]hese new assertions, even if presented at trial, would not have resulted in a different verdict." "Even if there had been some confusion in Detective Thomas' testimony regarding MDMA and MDMC," Judge Richter noted, "the evidence is still clearly convincing that MDMC was possessed with the intent to distribute." Appellant had "also attack[ed], for the first time post-trial, the chemist's testimony regarding the MDMC and present[ed] new evidence suggesting personal use." Nevertheless, "[g]iven the testimony presented at trial, the evidence of PWID is more than sufficient and convincing." In sum, appellant's

"post-trial change in tactics for meeting the Government's evidence is both too late and insufficient."

## II.    Analysis

The "trial court's denial of a motion for new trial is reviewed for abuse of discretion.  We will not reverse if the denial is reasonable and supported by the record." *Tyer v. United States*, 912 A.2d 1150, 1166 (D.C. 2006).  "In general, a trial court does not need to hold a hearing before ruling on a motion for new trial." *Geddie v. United States*, 663 A.2d 531, 534 (D.C. 1995).  The moving party bears the burden of persuasion. *Tyer*, 912 A.2d at 1167.

### A.    *Appellant's Arguments*

Appellant posits that the affidavits attached to his Rule 33 motion negated crucial evidence presented by the government at trial.  First, he asserts that the text messages about "molly" did not indicate his intent to distribute MDMC because "molly" is MDMA, not MDMC.  Thus, he assumes these text messages must be ignored altogether.  Second, he contends that the quantity of MDMC he possessed, standing alone, is insufficient, as a matter of law, to prove his intent to distribute.

He argues, therefore, that his PWID conviction should be vacated due to insufficient evidence and the case remanded for entry of a judgment of guilt for the lesser-included offense of misdemeanor possession of MDMC. In the alternative, he seeks a new trial on the PWID charge.

### B. The Evidence Was Sufficient

Appellant argues that the evidence was insufficient to prove his intent to distribute MDMC. It is not at all clear that he is entitled to raise this issue now, having failed to take a direct appeal. We need not decide this issue, however, because his argument is founded on an erroneous premise. He asks us to consider the trial record not as it actually exists, but as it *might have existed* if the affidavits he submitted were testimony that had been presented at trial and credited by the trial court. But we do not decide sufficiency challenges based on a hypothetical record; instead, we review the evidence that was before the fact-finder when it made its finding of guilt. *See, e.g.*, *Vest v. United States*, 905 A.2d 263, 266 (D.C. 2006) ("It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction." (brackets and citation omitted)); *cf. Best v. United States*, 66 A.3d 1013, 1019-20 (D.C. 2013) (in determining whether the Double

Jeopardy Clause would bar a retrial, "[w]e evaluate sufficiency based on the evidence that was before the trial court, even if it was admitted erroneously") (citing *Lockhart v. Nelson*, 488 U.S. 33, 40-42 (1988)).  Appellant makes no effort to demonstrate that the evidence actually in the trial record was insufficient to support his conviction for PWID.  *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (explaining that reversal for insufficient evidence is appropriate only if, "upon the record evidence adduced at the trial[,] no rational trier of fact could have found proof of guilt beyond a reasonable doubt").

### C.     *The New Trial Motion*

### 1.     Which Standard Applies?

Rule 33 allows the trial court to grant a new trial to a defendant "if the interests of justice so require" or "based on newly discovered evidence."  Super. Ct. Crim. R. 33.  A motion based on the interests of justice "may be made only within 7 days after the verdict or finding of guilty or within such further time as the Court may fix during the 7-day period."  *Id.*  "A motion for a new trial based on newly discovered evidence may be made only before or within three years after the verdict or finding of guilty."  *Id.*

Here, the court granted appellant's first extension during the time period prescribed in Rule 33, but the second extension was approved well outside the seven-day limit set by the rule. Ordinarily, the delay in filing the motion for a new trial would alter the standard by which the motion is judged. Under the circumstances of this case, however, the government has forfeited any argument that appellant's motion for a new trial was filed too late to be judged under the "interests of justice" standard.[3] We, therefore, are not constrained by the stricter standard that applies to motions based on newly discovered evidence.[4]

---

[3] Court rules containing time limits have been separated into two categories: jurisdictional or claim-processing. *Smith v. United States*, 984 A.2d 196, 199 (D.C. 2009). "'[C]laim-processing' rules are 'court-promulgated rules,' 'adopted by the Court for the orderly transaction of its business.'" *Id.* at 200 (quoting *Bowles v. Russell*, 551 U.S. 205, 211 (2007)). "'[C]laims-processing rules[]' . . . do not limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court. Unless a party points out to the court that another litigant has missed such a deadline, the party forfeits the deadline's protection." *Dolan v. United States*, 560 U.S. 605, 610 (2010) (citing, as an example, the Supreme Court's holding in *Eberhart v. United States*, 546 U.S. 12, 19 (2005), that Fed. R. Crim. P. 33 (b)(2) is a "claims-processing rule"). The time limits in Rule 33, therefore, may be forfeited by a party otherwise entitled to enforce them.

[4] The requirements of this more rigorous test are: "(1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal." *Godfrey v. United States*, 454 A.2d 293, 299 n.18 (D.C. 1983) (citation omitted).

2.      The Interests of Justice

Many of our decisions applying Rule 33's interests of justice standard involve motions filed after jury verdicts. In that context, when "evaluating the interests of justice, the trial court—sitting as a thirteenth juror—determines whether a fair trial requires that the [additional] evidence be made available to the jury." *Ingram v. United States*, 40 A.3d 887, 902 (D.C. 2012) (brackets and citation omitted). When a case has been tried without a jury, the court is not limited to starting afresh if it decides that a new trial should be granted. Instead, it may "vacate the judgment, take additional testimony, and direct the entry of a new judgment." Super. Ct. Crim. R. 33. In this case, Judge Richter did not reopen the record and enter a new judgment, but considered the newly proffered evidence, then denied the motion.[5]

---

[5] In his order denying the new trial motion, Judge Richter remarked that "the evidence is still clearly convincing that MDMC was possessed with the intent to distribute." Focusing on this language, appellant argues that the trial court did not apply the correct "standard of guilt." This argument misconstrues Judge Richter's order. The court had not vacated the judgment and was not making a new finding of guilt, to which the burden of proof beyond a reasonable doubt would apply. Instead, Judge Richter was explaining why he had decided to deny appellant's motion for a new trial. It was appellant's burden to persuade the court to grant that motion. *Tyer*, 912 A.2d at 1167.

Our precedents have repeatedly cautioned that the power to grant a new trial in the interests of justice is "temperately to be utilized." *See Sellars v. United States*, 401 A.2d 974, 979 (D.C. 1979); *Brodie v. United States*, 295 F.2d 157, 160 (D.C. Cir. 1961); *Benton v. United States*, 188 F.2d 625, 627 (D.C. Cir. 1951). "The rules do not define 'interests of justice[,]' and courts have had little success in trying to generalize its meaning." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (internal quotation marks omitted) (applying Fed. R. Crim. P. 33).[6] "But a new trial will be ordered in the interest of justice only when, after considering the evidence, the court can find that 'exceptional circumstances' prevented the defendant from receiving a fair trial." *Tyer*, 912 A.2d at 1167.

Perhaps unsurprisingly, our precedents do not cabin or clearly describe the "exceptional circumstances" that will justify granting a new trial in the interests of justice. "The facts are of critical importance to our consideration of the appeal[,] particularly if we are not limited to the 'newly discovered evidence' standards for granting a new trial." *Brodie*, 295 F.2d at 158. However, some guiding principles emerge from decisions issued over the last sixty-five years.

---

[6] Fed. R. Crim. P. 33 is almost identical to Super. Ct. Crim. R. 33.

In *Benton*, the court remanded for a new trial where, four days after the verdict, the defendant submitted an affidavit from the victim's mother declaring her belief that her twelve-year-old daughter had not been sexually assaulted. 188 F.2d at 626-27. The mother attended the trial and, at the close of its case, the government tendered her to the defense as a potential witness, but the defense did not call her to testify. *Id.* at 626. In her affidavit, the mother noted disparities between her memory of the events surrounding the alleged sexual assault and her daughter's testimony at trial. *Id.* at 626-27. Most importantly, the mother attested: "[I]n my opinion, my conscience does not allow me to believe that anything happened to my girl on that night. I heard what Mr. Benton said, and I heard what my daughter said." *Id.* at 627.

The court of appeals found the situation "exceptional" because the conviction rested almost entirely on the victim's testimony, which had been disputed by testimony from the accused. The opinion emphasized that

> [w]hen in such a case as this the additional evidence brought to the court's attention is that of the mother, who saw and talked to the child shortly after the alleged incident, and this evidence varies substantially from that given by the child, upon which the conviction rests almost entirely, we think a fair trial requires that the mother's testimony be made available to the jury.

*Benton*, 188 F.2d at 627 (referring to these circumstances as "special factors" justifying the unusual action of reversing the trial court and ordering a new trial) (footnotes omitted). The court appeared to be influenced, at least in part, by the prevailing rule at the time, that a person could not stand convicted of such an offense "unless the [child's] testimony is corroborated or otherwise strong and convincing." *Id.* at 627 n.2. We have since abolished the corroboration requirement for sexual offenses, *Gary v. United States*, 499 A.2d 815, 833-34 (D.C. 1985) (en banc), so it is fair to question whether a new trial would have been ordered under current law.

The decision in *Brodie* dealt with an uncommon claim of misidentification. Within forty-eight hours after his conviction at a bench trial, the defendant moved for a new trial based on "newly discovered evidence." 295 F.2d at 159. He had repeatedly denied involvement in the crime, and men who claimed to have actually committed the offenses (or to have been present) offered to testify on his behalf. *Id.* at 158-59. The trial judge denied the motion due to a "lack of diligence" by defense counsel. *Id.* at 159.

Recognizing that the "newly discovered evidence" label placed on the motion "may have misled the [trial judge] to apply the strict and narrow standards of due diligence rather than view the motion . . . as one which invoked broader discretionary powers," the court of appeals remanded the case "with all its puzzling aspects" for further consideration applying the "interests of justice" standard. 295 F.2d at 160. In doing so, the court noted that, although appellant would not have "the burden of showing his own diligence" under this more liberal standard, "the element of diligence, while still present, might well be but one of a number of factors to be considered . . . ." *Id.* at 159, 160.

More recent decisions have focused on external pressures which may have interfered with an appellant's ability to present a full defense. In *Lyons v. United States*, 833 A.2d 481 (D.C. 2003), defense counsel represented both before and after trial that the defendant was afraid to exonerate himself because of threats against him, his family, and a witness. *Id.* at 484-85 & n.5, 488. Recognizing that the defendant had been denied a fair trial if these allegations were true, we remanded the case for the trial court to conduct a "hearing to determine if [the defendant's] claims of fear and intimidation were credible." *Id*. at 488-89. *See also Geddie*, 663 A.2d at 532 (defendant sought "a new trial on the ground that

threats from his co-defendant . . . deprived him of his right to testify and his right to a fair trial").

The desire to present a better defense is not, without more, a sufficient basis for granting a new trial. In *Huggins v. United States*, 333 A.2d 385 (D.C. 1975), a police officer's testimony at the defendant's second trial was inconsistent with his testimony at the first trial. Defense counsel failed to impeach the officer with his prior testimony although counsel had a transcript of the earlier proceeding. *Id.* at 386. We evaluated the motion for new trial under both the "newly discovered evidence" and "interests of justice" standards, and held that relief was not warranted under either. The belated discovery of the contradictory statements did not qualify as newly discovered evidence because counsel had exhibited a lack of due diligence. *Id*. at 387. Nor did the motion qualify under the interests of justice standard, because "it is only under exceptional circumstances where, considering the evidence, the defendant did not receive a fair trial, that a new trial will be ordered," and there was "no showing that [the officer's testimony] was perjurious," or "that an acquittal would necessarily follow." *Id.*

The decision in *Benton* appears to have been the most generous in concluding that the interests of justice required a new trial. But that decision was

based upon a very peculiar set of circumstances. It did not establish a rule allowing a "do-over" simply because a defendant is dissatisfied with the outcome and only then decides to look for evidence to support his case. As our case law demonstrates, "a new trial . . . in the interest of justice" will be justified only if "'exceptional circumstances' prevented the defendant from receiving a fair trial." *Tyer*, 912 A.2d at 1167.

### 3. Appellant Is Not Entitled to Relief

Appellant has completely failed to meet that standard. This record is not comparable to the unique scenario presented in *Benton*. There was no question of misidentification. No codefendant intimidated appellant or prevented him from presenting a full defense. The evidence he submitted after trial was equally available prior to trial. In short, nothing interfered with appellant's ability to present his defense. Indeed, he won acquittals or partial acquittals on many of the charges against him. See note 1, above.

Appellant's counsel cross-examined the two government experts who testified about the drugs. However, he presented no evidence to refute the government's testimony that "molly" could refer to MDMC. Plainly believing that

Detective Thomas's testimony was mistaken, counsel nonetheless elected not to request a continuance so he could locate witnesses to expose the purported inaccuracy (or, perhaps, to testify about the quantities in which MDMC was normally sold):

> [Defense Counsel]: I'll go to my grave on this count and the fact that Molly is some completely other drug. And in the event of an adverse verdict, I'll post trial this —
>
> The Court: I mean, instead of saying you'll go to your grave and swearing and — you're not a witness in this case. On this evidence, I have the expert saying it's Molly, I have this unprescribed drug that they've analyzed saying it's this, that this is what they're talking about, and I have no evidence to the contrary.

Despite the court's indisputably accurate observations, appellant made no effort to contest these issues at trial, choosing instead to "post trial" the issue, represented by new counsel. Although appellant is not required to demonstrate his own diligence under the interests of justice standard, diligence is a valid factor for the trial court, and this court, to consider. *See Brodie*, 295 F.2d at 160. Even assuming, for the sake of argument, that defense counsel, having read the text messages, reasonably thought that an expert in drug trafficking would not be necessary to gain a partial acquittal for his client on the PWID MDMC charge (leaving only the lesser-included offense of misdemeanor possession), and further

assuming that he was surprised by the testimony of the government's experts, nothing prevented counsel from requesting time to find and call appropriate rebuttal witnesses. Such a request could have been more easily accommodated in a bench trial such as this than in a jury trial.[7]

Here, as Judge Richter recognized, appellant's motion reflected a "post-trial change in tactics." Appellant's regret that he did not present a better defense at trial is not an "exceptional circumstance," and thus, as the court properly concluded, it does not entitle him to a new trial.

Judge Richter was not required to hold a hearing before denying the motion. *See Prophet v. United States*, 707 A.2d 775, 779 (D.C. 1998) ("We have upheld the denial of a Rule 33 motion without a hearing when the trial court, after examining the proffered affidavit of a witness, concluded that the material contained in the affidavit would not 'in all likelihood' result in an acquittal." (citing *Poteat v. United States*, 363 A.2d 295, 297 (D.C. 1976)). Having recently conducted the bench trial in this case, Judge Richter was well-positioned to

---

[7] Appellant does not raise a claim of ineffective assistance of counsel, and we could not address that question without a fully developed record on the issue. *See Mack v. United States*, 570 A.2d 777, 785-86 (D.C. 1990).

evaluate the proffered affidavits, and he concluded that "[t]hese new assertions, even if presented at trial, would not have resulted in a different verdict."

More importantly, Judge Richter recognized that the motion represented a "post-trial change in tactics." As we have demonstrated, appellant's new attack on this one charge did not meet the "exceptional circumstances" test. This was apparent from an examination of the affidavits and the court's thorough knowledge of the trial record, which together provided the court sufficient information to evaluate appellant's claim to a new trial.

Therefore, in order to determine that "the interests of justice" did not "require" a new trial, it was not necessary to further litigate whether appellant and his friends (and others) used the term "molly" to refer to MDMC, MDMA, or both.[8] Nor was it necessary to reiterate the direct and circumstantial evidence that

---

[8] Although Judge Richter did not rely on such cases, we note judicial decisions indicating that "molly" has been used to refer to MDMC. *See, e.g.*, *United States v. Brey*, 627 F. App'x 775, 776 (11th Cir. 2015) ("The PSR states that 'molly' is a term referring to several schedule I controlled substances and their analogues, including MDMA/ecstasy (3, 4-methylenedioxy-methamphetamine) [and] MDMC/methylone (3, 4-methylenedioxy-methcathinone)[.]"); *United States v. Abbott*, 613 F. App'x 817, 818 (11th Cir. 2015) (challenging conviction "for conspiracy to possess with intent to distribute 3, 4-methylenedioxy-N-methylcathinone ('methylone' or 'Mollies,' a schedule I controlled substance similar to ecstasy)"); *United States v. Chong*, 990 F. Supp. 2d 320, 321 (E.D.N.Y.

(continued…)

appellant was selling MDMC (a drug chemically similar to MDMA) in capsules containing .1 gram of powder. Dr. Duer's understanding that MDMC is often (or even typically) distributed in larger quantities would not undercut this evidence demonstrating the customs of appellant and his buyers.

## III. Conclusion

On this record, we cannot say that exceptional circumstances prevented appellant from receiving a fair trial. The trial court did not abuse its discretion in denying the motion for a new trial, or in doing so without first holding a hearing. The judgment of the Superior Court is hereby

*Affirmed.*

---

(…continued)
2014) ("'Molly' is a term used by users, suppliers, and law enforcement for methylone. . . . It is associated with a variety of chemical substances . . . ."); *Glispie v. State*, 779 S.E.2d 767, 771-72 (Ga. Ct. App. 2015) (text messages referring to "molly"; capsules "tested positive for 3, 4-methylenedioxymethcathinone, commonly known as methylone or 'Molly'").

RUIZ, *Senior Judge*, dissenting: Appellant appeals his conviction, after a bench trial, of possession with intent to distribute MDMC.[1] I would remand the case to the Superior Court for further consideration of appellant's motion for a new trial on that charge, pursuant to the interest of justice standard, and for clarification of the trial court's reasoning.

Further consideration and clarification are necessary for two reasons. First, in denying the motion for new trial, the trial court might have relied, unduly, on a factor — that the evidence presented with the motion represented a "change in tactics" and was "too late" — that is not supported by the record. Second, further clarification is necessary to reconcile the court's guilty verdict with its reasoning for denying the motion based on the evidence presented at trial and with the motion. The trial court may well need to hold a hearing to properly assess the expert evidence presented with appellant's motion.

---

[1] MDMC is methylenedioxy-methcathinone hydrochloride. Its distribution or possession with intent to distribute is a felony, *see* D.C. Code § 48-904.01 (a)(1) (2012 Repl.), but its simple possession is a misdemeanor. *See Thomas v. United States*, 650 A.2d 183, 184 (D.C. 1994). Appellant does not challenge the finding that he possessed MDMC; his appeal concerns only the finding of intent to distribute.

*The trial and motion for new trial*. During trial, a government witness gave testimony that defense counsel thought was patently incorrect, and in closing alerted the trial court, stating that he "would go to the grave" on this point, and noting that if appellant was found guilty of possession with intent to distribute MDMC, he would file a posttrial motion for new trial.[2] In a filing five days after the court found appellant guilty, counsel requested additional time to file the motion. The motion was duly filed by new appellate counsel within the period granted by the court, and the court proceeded to decide the motion. At no time did the government object to the granting of the extension to file the motion.

The motion was filed pursuant to Superior Court Criminal Rule 33. Quoting the Rule, appellant requested a new trial "if the interest of justice so requires" — the standard that applies to motions filed "within seven days after the verdict or finding of guilty. . . ." Super. Ct. Crim. R. 33 (a), (b)(2). Alternatively, and again quoting Rule 33, appellant requested that because this was a bench trial, instead of

---

[2] A government witness, Detective George Thomas, testified that "molly" referred to the drug MDMC. Detective Thomas's testimony was relevant to the charge of PWID MDMC because some three months before appellant was found to possess MDMC, he had sent texts offering to sell "molly." Whether appellant was referring to MDMC when he said "molly" was therefore circumstantial evidence of his intent to sell MDMC in the past, even if it did not directly support that he intended to sell the MDMC which he was charged with possessing three months later.

having a new trial, the court could "vacate judgment, take additional testimony, and direct the entry of a new judgment." Super. Ct. Crim. R. 33 (a).

When considering the Rule 33 motion, the trial court did not make express reference to the two specific requests made by appellant under Rule 33 or the standard that applies in deciding whether to grant the motion "in the interest of justice."[3] In denying appellant's motion, the trial court referred to the evidence submitted with the new trial motion as "a change in trial tactics" that was "both too late and insufficient." The trial court's reference to appellant's motion as a "change in trial tactics" that was "too late" is unexplained and, on this record, mystifying. Counsel clearly challenged at trial the government's evidence that appellant possessed MDMC with the intent to distribute. The government's case that appellant had the intent to distribute MDMC was based on texts found on appellant's cellphone and the quantity of MDMC found in appellant's home. Trial counsel immediately disputed the testimony of the government's witness that the

---

[3] Appellant's motion did not refer to the third basis for a new trial under Rule 33, the availability of "newly discovered" evidence, which may be filed up to three years after judgment, Super. Ct. Crim. R. 33 (b)(2), nor has appellant ever suggested that the evidence submitted with his motion met the requirements for newly discovered evidence. The trial court did not refer to the standard for newly discovered evidence. Yet the government argued in the trial court and argues in this court that the case law relevant to newly discovered evidence is relevant to the motion filed in this case.

"molly" referred to in the texts was a street name for MDMC, but was instead a reference to MDMA, a different drug than the one appellant was charged with. See note 2 *supra*. Trial counsel also argued that evidence of the bare quantity of the drug seized at appellant's home[4] was insufficient by itself to support an inference of intent to distribute because it lacked context and the government had presented no evidence "that refutes the fact that this is consistent with personal use . . . ."[5] Counsel pointed out that such evidence was particularly important in a case where the drugs were not packaged for sale and there was scant evidence of the drug-selling paraphernalia (e.g., bags, ledgers) that routinely supports an inference of intent to distribute. In the posttrial motion, appellate counsel made the same arguments on both points that had been made during trial, supported those arguments with affidavits from experts, and asked the trial court to reopen the

---

[4] The MDMC seized at appellant's home was in one plastic bag, weighing 8.2 grams, two capsules that contained a total of .19 grams and a partial tablet containing .2 grams.

[5] Trial counsel argued:

> The [government] expert talked about Ecstasy and then MDMC and then talked about what he told me was Methyolone. . . . But that is diluted to the point where he said — he agreed with me that it was sort of diluted Ecstasy. So in order to get high from the drug, one would have to use more. So if there's eight grams, somebody would be using a significant amount of significantly more of the drug since diluted, you need more to get high.

record "to take additional testimony" after a bench trial, as expressly provided for in Rule 33. Thus, there was no change in the defense's tactics, only further evidentiary support for the arguments previously made to the court.

Moreover, it was not "too late" as there was no delay in filing the motion. Trial counsel told the judge during trial that in the event of an adverse judgment, appellant would be filing a motion for new trial. Appellant timely asked for an extension within the seven-day time limitation set out in Rule 33 to file a motion to be considered under the more liberal "interest of justice" standard, without objection by the government. The trial court granted the extension and the motion was filed within the time allowed by the judge. In short, the record does not support that the motion presented a "change in tactics" and was "too late." Thus, the trial court should reconsider the motion without taking into account these unsupported factors. *See Geddie v United States*, 663 A.2d 531, 534 (D.C. 1995) ("[G]enerally the factual record must be capable of supporting the determination reached by the trial court.").

Moreover, unlike under the "newly discovered" evidence standard, delay is not a primary focus under the interest of justice standard. *See Brodie v United States*, 295 F.2d 157, 160 (D.C. Cir. 1961); *Sellars v. United States*, 401 A.2d 974,

979 (D.C. 1979) (noting that, though the decision whether to grant a new trial under the interest of justice standard is committed to the trial court's discretion and should be "temperately . . . utilized," the standard to be applied is "broader in scope than the limitations which have been held applicable where the motion is based on newly discovered evidence" (quoting *Benton v. United States*, 188 F.2d 625, 627 (1951))). This is sensible because, to be considered under the interest of justice standard, the motion has to be filed within seven days of the finding of guilt, whereas in the case of a later-filed, newly discovered evidence motion (up to three years), "the passage of time inevitably ripens the finality of the judgment and increases the difficulty of again proving a case." *Brodie*, 295 F.2d at 159-60. Judge Fisher's opinion properly rejects the government's suggestion that the newly discovered evidence standard should be applied in this case and purports to use the interest of justice standard. Yet it approves of the trial court's comment that the motion was a posttrial change of tactics that came too late as reasons for denying the new trial motion, relying on *Brodie* for the proposition that "lack of diligence" can be taken into account under the interest of justice standard. As the court made clear in *Brodie*, however, diligence is "but one of a number of factors to be considered," and may not be "controlling." *Id*. at 159. In *Brodie*, the appellate court reversed and remanded the denial of a motion for new trial because it appeared to have been driven by the "due diligence" standard rather than upon

consideration of the facts of the case against the ultimate consideration: whether "a fair trial requires" that the evidence proffered with the motion for new trial be considered by the fact-finder. *Id*.

*The evidence*. In deciding what the interest of justice requires, "the facts are of critical importance." *Id.* at 158. Here, the trial court concluded, without holding a hearing, that the "new assertions [presented in appellant's motion] even if presented at trial, would not have resulted in a different verdict." On this record, that conclusion is far from evident.

A remand for clarification is necessary to reconcile the court's guilty verdict and its subsequent denial of the new trial motion after being presented with additional evidence that contradicted evidence on which the original verdict was based. In finding appellant guilty of possession with intent to distribute MDMC, the trial court relied on two different strands of evidence from which intent to distribute could be inferred: (1) five texts on appellant's cellphone in which he referred to "molly" and other drugs he was selling to friends and (2) the quantity of MDMC that was found in his home. The trial court acknowledged that neither one sufficed, stating that although "the quantity alone might not be enough, [and] the

text messages alone might not be enough, . . . *together* they clearly constitute proof beyond a reasonable doubt." (Emphasis added.)

The trial court's assessment that each of the individual strands of evidence was by itself insufficient to convict was well taken. The texts were not particularly strong evidence of appellant's intent to distribute as none referred specifically to MDMC but to a different drug, MDMA. Moreover, even if, as Detective Thomas had testified (but defense counsel vigorously disputed), "molly" referred to MDMC, the texts mentioning "molly" were sent during a 3-5-week period in May-June that significantly predated, by three months, the seizure of MDMC during a search at appellant's home in September on which the charges were based. There were no texts referring to "molly" that corresponded to the time when the government proved appellant possessed MDMC. The inference of intent to distribute from the quantity of the drug seized also was inherently weak because it was presented without any physical evidence, such as packaging or supplies that corroborated that the MDMC was being sold or prepared for sale. Instead, the government's witness, Danielle LaVictoire, merely made a straightforward mathematical calculation that the 8.2 grams found in a plastic bag could be divided into 82 capsules of .1 gram. This calculation was apparently based on the fact that two capsules with a total of .19 grams were found at the house, although there was

no evidence presented of the quantity of MDMC in each capsules.  However, there was no cache of empty capsules or evidence that the powder was being transferred into capsules for distribution, nor was there any expert evidence that a capsule containing .1 gram of MDMC was marketable as such.

With the motion for new trial, appellant submitted the sworn affidavits of two experts.[6]  They stated that "molly" was a term used to refer to MDMA, not MDMC.  This testimony — which was unrebutted by the government in the posttrial motions proceeding — directly contradicted Detective Thomas's trial testimony that the use of "molly" in appellants' stale text messages referred to MDMC.  The expert affidavits also supported the argument made at trial by defense counsel that possession of the MDMC found at appellant's home could be consistent with personal use.

---

[6]  The experts were Wayne C. Duer, Ph.D. Chemistry, American Academy of Forensic Sciences member, who has published thirty-seven articles in peer-reviewed scientific journals and worked in forensic toxicology for thirty-seven years, including the Florida Department of Business Regulation (ten years), the Florida Department of Law Enforcement (seven years) who certified him as a forensic chemist and toxicologist, the Hillsborough County, Tampa, Florida Medical Examiner's Department (fifteen years), and as a private expert consultant (five years); and Michael Radon who has forty years' of professional experience in the drug and alcohol counseling, detoxification and rehabilitation field, which has included over 1,000 bio-psych-social assessments requiring familiarity with drug street names.

In addition to dismissing the evidence presented in appellant's motion as a "change in tactics" that was "too late," the trial court disposed of the request to vacate judgment, take new evidence, and enter new judgment for misdemeanor possession of MDMC by concluding that, "these new assertions, even if presented at trial, would not have resulted in a different verdict." As already discussed, the assertions were not "new" as both were presented during trial. What was new was the expert evidence presented in support of those arguments. The trial court had said, in finding appellant guilty, that the evidence of texts with references to "molly" was insufficient by itself to find appellant guilty of intent to distribute MDMC and had similarly expressed that the evidence of the quantity of the MDMC, by itself, was insufficient for an inference of intent to distribute. Thus, both were necessary, in the trial court's view, for a finding of guilt beyond a reasonable doubt. The expert evidence submitted with the motion for new trial confirmed the trial court's assessment that each strand of the government's evidence to prove intent to distribute was indeed insufficient on its own to support a finding of guilt. Yet, when faced with additional proof that further undermined the government's case, and without having heard the witnesses whose testimony had been proffered in sworn affidavits, the trial court summarily concluded their evidence would not have made a difference. In this bench trial, it would have been relatively easy to reopen the record to admit such important evidence. It is difficult

to reconcile the trial court's summary denial of the request for new trial or to admit the proffered testimony as being in the interest of justice in light of its recognition of the deficiencies in the government's case and stated reasons for the finding of guilt.

The facts of the case warranted a more searching examination. The government's case that appellant had the intent to distribute MDMC was based on weak and circumstantial evidence. Appellant's Rule 33 motion presented expert evidence that directly contradicted Detective Thomas's testimony that "molly" is MDMC; the trial court had recognized this problem, referring to the "confusion" in Detective Thomas's testimony.[7] The affidavits took specific aim at Ms. LaVictoire's testimony that the 8.2 grams of MDMC would yield 82 capsules and, more importantly, cast doubt on whether even that number of capsules would be inconsistent with personal consumption by appellant, who was shown to be a drug

---

[7] Judge Fisher's opinion cites four decisions from other jurisdictions "indicating that 'molly' has been used to refer to MDMC." See *ante* at note 8. As there noted, the trial court in the case before us was not made aware of these decisions, nor was the evidence presented in those cases presented to the trial court here. The government has not cited these cases on appeal. It is unclear whether and, if so, how, these citations are to figure into our consideration of the trial court's denial of appellant's Rule 33 motion.

user.[8] The trial court did not say that the proffered witnesses were unqualified or that their affidavits were on their face incredible. Nor could the trial court have relied on countervailing evidence, as the government did not present any evidence in its opposition to the posttrial motion to rebut appellant's expert witnesses. *Cf. Tyer v. United States*, 912 A.2d 1150, 1167 (D.C. 2006) (noting with respect to recantations proffered posttrial, that "if the trial court does not deem the recantation credible, that determination ends the inquiry" under the interest of justice standard). The trial court did not explain why this expert evidence, which supported that appellant's texts did not refer to the sale of MDMC and that the MDMC appellant possessed was consistent with his personal use, would not have resulted in a different finding of intent to distribute.[9] If credited by the trial court, appellant's proffered evidence would require acquittal of the felony conviction on the charge of PWID MDMC and warrant entry of judgment for misdemeanor

---

[8] Appellant had a history of prescribed amphetamine drug use, having over 800 pills prescribed and the government finding 138 of them. As noted by the expert affidavits, use of certain drugs results in the user developing a tolerance for MDMC, especially if they have a history of taking amphetamines. Accordingly, given appellant's history of prescribed amphetamine drug use and the government's failure to prove beyond a reasonable doubt that appellant was not a heavy user of MDMC, the 8.2 grams of MDMC in his possession could be consistent with appellant's personal use.

[9] Likewise, the majority opinion does not deal with the substance of the experts' affidavits.

possession of MDMC. Presented with evidence that had the potential to dictate a different result, it is not enough simply to say, without explanation and in evident tension with an earlier assessment of the government's case, that the proffered evidence would not have made a difference even if it had been presented at trial. Careful consideration of such critical evidence surely is a requirement in determining the interest of justice. *See Prophet v. United States*, 707 A.2d 775, 779 (D.C. 1998) (affirming denial of Rule 33 motion after noting that trial court "not only gave careful consideration to the motion but explained in detail the reasons for its ruling").

For these reasons, I would remand the case for further consideration and clarification by the trial court and, as appropriate, a hearing so that the trial court can assess the weight of the expert evidence presented with the Rule 33 motion.[10]

---

[10] Appellant argues that the trial court erred as a matter of law by applying an incorrect standard — clear and convincing instead of beyond a reasonable doubt — when it stated that "the evidence is still clearly convincing that MDMC was possessed with the intent to distribute." I do not believe that the trial court's comment should be read as confusing the standard for a finding of guilt beyond a reasonable doubt because it was made in the context of the motion for new trial, where appellant has the burden to persuade the judge.

The trial court did make a puzzling comment in explaining its guilty verdict, however. Concerning the defense argument that there was no evidence that the MDMC seized at appellant's home was inconsistent with personal use, the trial court countered that there was no evidence that appellant was "a fiend."

(continued…)

Otherwise, this court's review on appeal is a meaningless exercise. *See Portillo v. United States*, 62 A.3d 1243, 1257 (D.C. 2013) (stating that the trial court "shall make finding of fact on the record sufficient to allow meaningful appellate review").

---

(…continued)

Presumably this meant that only a very heavy user or highly addicted person could possibly have that quantity for personal consumption. But it was not the defense's burden at trial to establish that appellant possessed the drugs for personal use. In the absence of any physical evidence of intent to distribute, it remained the government's burden to prove beyond a reasonable doubt that the quantity of drugs was inconsistent with personal use by the appellant. However, the government presented no evidence at trial about the usual dose of MDMC, or how often it may be consumed, or appellant's likely consumption. With the Rule 33 motion, when he had the burden to persuade the trial court, appellant presented expert evidence that MDMC is ten times less potent than MDMA; that users develop a tolerance to the drug; that the effect of MDMC is relatively short-lived and that, as a result, users consume MDMC repeatedly to maintain a high. There was ample evidence presented at trial that appellant possessed and used a number of drugs.