Filed 3/4/24  P. v. Nevarez CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERICK NEVAREZ,<br><br>Defendant and Appellant. | C097543<br><br>(Super. Ct. No. 19FE020709)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on February 9, 2024, be modified as follows:

1.  On page 9, at the end of the first full paragraph ending "was more than reputational," add as footnote 2 the following footnote:

**2** Our Supreme Court's recent decision in *People v. Clark* (Feb. 22, 2024, S275746) __ Cal.5th __ [2024 Cal. LEXIS 774] does not assist defendant.  In *Clark*, our Supreme Court held the prosecution must

demonstrate that all predicate offenses shared a nexus to the collective nature of the gang. (*Id.* at p. __ [2024 Cal. LEXIS 774 at p. 25].) Our Supreme Court further held this showing could be made by linking the predicate offense to the organizational structure of the gang, to the gang's primary activities, or to the common goals or principles of the gang. (*Id.* at p. __ [2024 Cal. LEXIS 774 at p. 25].)

The first predicate offense involved a Varrio Gardenland gang member robbing a drug dealer, who dealt drugs in Varrio Gardenland territory without paying taxes to the Varrio Gardenland gang. Our Supreme Court pointed to a predicate offense involving similar facts as sufficient to demonstrate a nexus to the organizational structure of the gang. (*People v. Clark*, *supra*, __ Cal.5th at pp. __ [2024 Cal. LEXIS 774 at pp. 15, 27].) Both predicate offenses involved Varrio Gardenland gang members committing robberies, which Detective Sample testified was a primary activity of the Varrio Gardenland gang. Our Supreme Court pointed to the commission of the gang's primary activities as an example of when predicate offenses sufficiently demonstrate a nexus to the collective nature of the gang. (*Id.* at pp. __ [2024 Cal. LEXIS 774 at pp. 25, 26].) Accordingly, sufficient evidence supported defendant's gang enhancement.

There is no change in the judgment.

Defendant's petition for rehearing is denied.

2

BY THE COURT:


/s/_____
ROBIE, Acting P. J.


/s/_____
DUARTE, J.


/s/_____
KRAUSE, J.

Filed 2/9/24  P. v. Nevarez CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ERICK NEVAREZ,<br><br>　　　　Defendant and Appellant. | C097543<br><br>(Super. Ct. No. 19FE020709) |

Defendant Erick Nevarez was convicted of premeditated attempted murder for the benefit of a criminal street gang.  On appeal, he contends (1) insufficient evidence supports the predicate offenses used to prove the gang enhancement and (2) his counsel was ineffective for failing to object to hearsay testimony given by the gang expert.  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Defendant's appeal pertains to the evidence regarding the predicate offenses supporting the gang enhancement. We thus do not recite facts relevant only to the attempted murder conviction and nongang-related allegations.

During trial on defendant's attempted murder offense and nongang-related allegations, defendant admitted to being a member of the Varrio Gardenland gang, a subset of the Norteño criminal street gang, at the time of the offense. Subsequently, the jury found defendant guilty of attempted murder and found true allegations that he acted with premeditation, used a deadly weapon, and inflicted great bodily injury. Defendant contemplated admitting the remaining gang allegation; specifically, that he committed the attempted murder for the benefit of the Varrio Gardenland Norteño criminal street gang. Defendant decided, however, to proceed with a court trial on the gang allegation to preserve future appellate rights regarding potential legislative changes. In light of proceeding with a court trial, defense counsel waived the applicability of hearsay restrictions to the gang expert's testimony, such as those announced in *People v. Sanchez* (2016) 63 Cal.4th 665, including to the expert's testimony that was relevant to "the history of the gang, including the predicate offenses." Counsel indicated he knew the prosecution was capable of calling qualified witnesses to testify about the predicate offenses and that he was the attorney on one of the cases.

The prosecution called Sacramento Police Detective John Sample as its gang expert. Detective Sample testified about the Norteño criminal street gang; specifically, that all subsets of the Norteño gang share similar objectives and philosophies, including maintaining their neighborhoods free of rival gang members. Further, "[r]espect is very important," as is loyalty and family. Typically, Norteño gang members arm themselves with firearms, but Detective Sample has seen them use baseball bats, sticks, knives, brass knuckles, and vehicles as weapons. Primary activities of the Norteño gang are drug sales, illegal weapons possession, and the commission of robberies, shootings, and murders.

2

Norteño gang members identify themselves as members of the gang by wearing red clothing and exhibiting tattoos demonstrating allegiance to the gang. In some cases, members also wear a Mongolian style haircut. It is common to see Norteño gang members use hand signs and graffiti to demonstrate allegiance to the gang, and also showcase their allegiance on social media.

The Norteño gang, and its rival the Sureño gang, originated in the California prison system. The structure for the gang is dictated by the members serving time in prison while younger members "put in work" through gang subsets in various neighborhoods, which is the case in Sacramento. One Sacramento Norteño subset is Varrio Gardenland. Varrio Gardenland members, like Norteño gang members, identify with the color red. Varrio Gardenland members exhibit hand signs and tattoos specific to their subset and also specific to the larger Norteño gang. Another Norteño subset is the Varrio Diamond Sacramento.

Varrio Gardenland and Varrio Diamond Sacramento are allies and commit crimes together. Both subsets have a "primary allegiance" to the Norteño umbrella gang, which is why members of both subsets wear red clothing and exhibit the letter "N" and number 14 in tattoos or hand signs.

Detective Sample testified to the first predicate offense as occurring on May 18, 2016, and involving Justin J. and Terry E. as the perpetrators of a robbery. At the time, Terry was a Varrio Gardenland gang member and Justin was a Varrio Diamond Sacramento gang member. Terry had a Norteño gang tattoo on his face and a Varrio Gardenland tattoo on his chest. He admitted to being a Varrio Gardenland gang member and had been known to associate with other Varrio Gardenland gang members. Justin had multiple tattoos showing his allegiance to the Varrio Diamond Sacramento subset, as well as the Norteño umbrella gang.

Before the robbery, Justin spoke to the victim, a known Norteño drug dealer who had moved to Varrio Gardenland territory, about paying "taxes" on his drug dealings to

3

the Norteño gang structure. Following the conversation, Justin and Terry beat him and robbed him of $15,000. In Detective Sample's opinion, Justin and Terry robbed the victim for the financial benefit of the gang, even though evidence also suggested that Justin may have robbed the victim because he was dealing drugs outside Justin's young daughter's home.

The second predicate offense Detective Sample testified to occurred on May 14, 2018, and involved Esteban R. and Mario G., who both had previously admitted to being Varrio Gardenland gang members. Esteban and Mario also had tattoos demonstrating loyalty to Varrio Gardenland, and Mario had tattoos on his neck and wrist signifying loyalty to the Norteño umbrella gang. Esteban wore the Mongolian hairstyle typical of Norteño gang members and was known to associate with other Varrio Gardenland gang members. Mario had been previously contacted by police officers while wearing red clothing and had admitted membership in the Varrio Gardenland subset.

In May of 2018, Esteban, Mario, and another Varrio Gardenland gang member beat up a victim and took his belongings, including his wallet, while asking the victim if he knew where he was located. In Detective Sample's opinion, the offense occurred for the benefit of a criminal street gang because of the group nature of the assault and the language used during the assault. Detective Sample further believed the robbery was committed to financially benefit the gang because the members who committed the offense were likely to keep the money and property they took from the victim.

Detective Sample then extensively testified to defendant's gang ties and the crime he committed, ultimately testifying to his opinion that defendant committed the attempted murder of a perceived rival gang member for the benefit of a criminal street gang.

Following Detective Sample's testimony, the parties rested and submitted the matter to the trial court without argument. The trial court found that the prosecution met its burden in proving defendant committed the attempted murder for the benefit of a

criminal street gang, namely the Varrio Gardenland Norteños as alleged in the information.

At defendant's sentencing hearing, the trial court struck the great bodily injury enhancement and the weapons enhancement, leaving only the gang enhancement. The trial court sentenced defendant to a total of 15 years to life in prison.

Defendant appeals.

DISCUSSION

I

*Sufficient Evidence Supports The Trial Court's*

*True Finding On The Gang Enhancement*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) " 'An appellate court must accept logical inferences that the [trier of fact] might have drawn from the evidence even if the court would have concluded otherwise.' " (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419.) Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Reviewing courts must consider all the evidence admitted at trial, even if erroneously admitted, to establish whether there was substantial evidence. (*Lockhart v. Nelson* (1988) 488 U.S. 33, 39-42.) "[T]he sufficiency of the evidence to support an enhancement" is reviewed "using the same standard . . . appl[ied] to a conviction." (*People v. Wilson* (2008) 44 Cal.4th 758, 806.)

To prove a Penal Code[1] section 186.22, subdivision (b) allegation, the prosecution must establish, among other things, the existence of "an ongoing, organized association or group of three or more persons, whether formal or informal" that has "as one of its primary activities the commission of one or more of the criminal acts enumerated in subdivision (e) . . . and whose members collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).) " '[P]attern of criminal gang activity' means the commission of . . . two or more of the following offenses, provided [among other things] . . . the offenses were committed on separate occasions or by two or more members, the offenses commonly benefited a criminal street gang, and the common benefit from the offenses is more than reputational." (§ 186.22, subd. (e)(1).) "[B]enefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational." (§ 186.22, subd. (g).)

A

*The Prosecution Demonstrated A Single Criminal Street*

*Gang Committed The Predicate Offenses*

Defendant argues the prosecution failed to prove the predicate offenses were committed by members of the same criminal street gang as required by *People v. Prunty* (2015) 62 Cal.4th 59. Defendant focuses on whether the prosecution proved an ongoing organizational relationship between the Varrio Gardenland subset and the Varrio Diamond Sacramento subset, and further whether those subsets had an organizational relationship to the Norteño umbrella gang. In a related argument, defendant argues that, because of the prosecution's failure to show an organizational relationship under *Prunty*, the prosecution also failed to show "the predicate offenses were *collectively* committed

---

**1**      Undesignated statutory references are to the Penal Code.

by members of the" Norteño gang.  (Italics added.)  Defendant's reliance on *Prunty* is misplaced.

In *Prunty*, our Supreme Court held:  "[W]here the prosecution's case positing the existence of a single 'criminal street gang' for purposes of section 186.22[, subdivision ](f) turns on the existence and conduct of one or more gang subsets, then the prosecution must show some associational or organizational connection uniting those subsets." (*People v. Prunty*, *supra*, 62 Cal.4th at p. 71.)  "*Prunty* also explained, however, that this holding is inapplicable 'when a defendant commits a crime to benefit a particular subset, and the prosecution can show that the subset in question satisfies the primary activities and predicate offense requirements, [because] there will be no need to link together the activities of various alleged cliques.' "  (*People v. Tovar* (2017) 10 Cal.App.5th 750, 758.)

Here, the prosecution did not allege that defendant committed his offense for the benefit of the Norteño gang, which exists based on the conduct of subsets, like the two subsets here—Varrio Gardenland and Varrio Diamond Sacramento.  Instead, the prosecution alleged defendant committed his offense for the benefit of the Varrio Gardenland subset.  Because the allegation was specific to the subset gang, which did not turn on the existence and conduct of one or more subsets, the prosecution was not required to show an organizational link between Varrio Gardenland and Varrio Diamond Sacramento or the Norteño umbrella gang.  Accordingly, *Prunty* is inapplicable and does not provide a basis for us to conclude the gang enhancement is not supported by substantial evidence.

In reply, defendant argues that, if the gang enhancement was found true based on defendant's conduct benefitting the Varrio Gardenland gang, then insufficient evidence supported a finding defendant acted to benefit Varrio Gardenland because the evidence demonstrated he committed the offense to benefit the Norteño umbrella gang.  The People addressed this issue in their respondent's brief.  We disagree with defendant.

7

Like the defendant in *Tovar*, a case defendant relies on, defendant admitted he was a member of a Norteño subset—Varrio Gardenland—at the time he committed the offense. This testimony "permitted the inference that [defendant] intended to benefit [his Norteño subset] in particular." (*People v. Tovar*, *supra*, 10 Cal.App.5th at p. 759.) "*Prunty* observed that the 'ample evidence' in that case that the defendant claimed to be a member of a specific subset 'was likely sufficient for the jury to infer that [the defendant] intended to benefit that group.' " (*Ibid*.) While dicta, " 'Supreme Court dicta generally should be followed, particularly where the comments reflect the court's considered reasoning.' " (*Ibid*.) Thus, we reject defendant's claim that insufficient evidence demonstrated he acted to benefit Varrio Gardenland.

B

*The Prosecution Demonstrated The Predicate Offenses Were*

*Committed To Confer A Benefit That Was More Than Reputational*

Defendant contends the prosecution failed to demonstrate the predicate offenses benefited the Norteño criminal street gang in a way that was more than reputational. We note again that the prosecution did not need to prove the predicate offenses were committed to benefit the Norteño gang because it was the Varrio Gardenland subset defendant was alleged to have benefitted. (See *People v. Tovar*, *supra*, 10 Cal.App.5th at p. 758.) We will construe defendant's argument as one contending the evidence did not sufficiently prove the predicate offenses benefited Varrio Gardenland beyond a reputational benefit. The People addressed this argument in their respondent's brief. We disagree with defendant's construed contention.

Under section 186.22, "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (§ 186.22, subd. (g).)

8

Detective Sample's testimony was sufficient to demonstrate the benefit was financial, as opposed to merely reputational. Both predicate offenses involved taking money from the victims in Varrio Gardenland territory. The first predicate offense dealt specifically with gang culture, in that the victim did not pay taxes to the Norteño umbrella gang from proceeds earned while drug dealing in Varrio Gardenland territory. It is reasonable to infer that the first predicate offense was committed to maintain the good standing of Varrio Gardenland within the larger Norteño structure and also for Varrio Gardenland to financially benefit from the $15,000 taken, of which only a portion was meant to benefit the larger Norteño gang through taxes. The second predicate offense also involved the taking of money and property. Detective Sample testified that if the money had not been recovered by officers that it would likely have gone to the gang and the members who took it. Accordingly, sufficient evidence supports the trial court's finding that the benefit to Varrio Gardenland as a result of the predicate offenses was more than reputational.

II

*Counsel Was Not Ineffective For Failing To Object To Hearsay Testimony*

Defendant contends his counsel was ineffective for failing to object to hearsay testimony under *Sanchez*. (*People v. Sanchez*, *supra*, 63 Cal.4th 665.) We disagree.

"To demonstrate ineffective assistance of counsel, [defendant] 'must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citation.] On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' [Citation.] '[W]here counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no

9

conceivable reason for counsel's acts or omissions.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)

The record reflects that defendant's counsel waived the requirements of *Sanchez* because he was confident the prosecution could produce sufficient witnesses to testify to the underlying facts. Counsel further indicated he was familiar with one of the predicate offenses having served on the case. Additionally, counsel indicated the only reason defendant was going forward with a court trial on his gang allegation, instead of admitting it, was because defendant wanted to preserve his right to benefit from any future change in the law. Based on these assertions, the record is sufficient to show defense counsel had a tactical reason to waive application of *Sanchez*. Counsel opted to save time and progress through the bifurcated trial, knowing the prosecution could call additional and qualified witnesses to meet its burden. Since defendant's interest was merely in preserving future appellate rights, it was reasonable for counsel to make such a waiver. Accordingly, counsel's failure to object on *Sanchez* grounds was not ineffective.

## DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
DUARTE, J.

/s/
KRAUSE, J.

11